FERDINAND BUERCK et al. v. MID-NATION IRON PRODUCTS COMPANY et al., Appellants.
SOUTHEAST MISSOURI TRUST COMPANY, Trustee; JOHN F. GREEN, Interveners, Appellants, v. MID-NATION IRON PRODUCTS COMPANY; ODON GUITAR, JR., Receiver, Appellant.

Division Two, August 28, 1922.

1. **RECORD PROPER: Receiver: Motion to Vacate.** A motion to vacate the appointment of a receiver is no part of the record proper, and cannot be considered on appeal unless preserved in a duly authenticated bill of exceptions.

2. ———: **Special Appeal: Bill of Exceptions Subsequently Filed.** The special appeal granted by one of the judges of the Supreme Court under the statute (Sec. 2043, R. S. 1919; now Sec. 1474, R. S. 1919) must be determined upon the record existing when the appeal was allowed, and which shows the errors complained of and to be determined when the case is heard; and a bill of ex-

ceptions subsequently allowed and filed in the trial court cannot be considered on said special appeal, but only ·the record proper as it then existed. [Following Brockmann v. United Railways Co., 271 Mo. 696.]

3. **CORPORATION: Fraud of Directors: Receiver: Sufficient Grounds.** Where only the record proper can be considered on an appeal from an order of the circuit court refusing to set aside its appointment of a receiver, allegations in the petition that defendant Clemons contracted to purchase 25,000 acres of Missouri land, reputed to be iron-ore-bearing, for $138,000; that he organized the defendant corporation with a capital stock of 200,000 shares of the par value of $10 each, fully paid and non-assessable, no money being paid into its treasury; that the corporation authorized the issue of first mortgage gold bonds in the amount of $1,000,000, and sold $160,000 of them to another corporation, and out of the proceeds $138,000 was paid as the purchase price of the lands, and the balance of $22,000 Clemons appropriated to his own use; that he had the directors of the corporation, who were his dummies and under his absolute control, execute its note payable to himself for $220,000, without any consideration whatever to the corporation, and secured its payment by pledging as collateral the bonds of the corporation in double the amount of the note; that this left as the entire assets of the corporation the 25,000 acres of land, of a value not to exceed the purchase price, subject to the liabilities of the corporation for $2,000,000 authorized capital stock, over 16,000 shares of which were issued to Clemons, $1,000,000 authorized mortgage bonds, of which $600,000 were outstanding, either sold or pledged, and said note of $220,000; that he then caused 46,000 acres of other land to be conveyed to a dummy at the stated consideration of $77,478, paid for by notes of said dummy, secured by a first deed of trust on said lands, and then immediately caused said dummy to place a second deed of trust thereon to secure notes aggregating $172,522, and caused said dummy to convey said lands to the corporation for $325,000 par value of its stock and the assumption and agreement to pay said deeds of trust; that he then caused $110,000 of the notes secured by the second deed of trust to be placed in the hands of another director, and acting together they turned over said notes to the corporation and received therefor $110,000 of its bonds; that they then permitted said first deed of trust to be foreclosed, and said 46,000 acres were lost to the corporation; that the net result of this manipulation was that the corporation parted with $325,000 par value of its stock and $110,000 face value of its bonds without receiving any benefit whatever; that plaintiffs and others paid $100,000 for the stock and bonds sold to them without knowledge of the foregoing facts and upon

positive misrepresentations, and Clemons applied the greater por-
tion of the moneys, thus paid, upon the $220,000 note held by him,
for which no consideration passed to the corporation, and thereby
reduced the note to $140,000; that nothing has been done by
Clemons and the other directors to mine the property, erect nec-
essary buildings or purchase mining machinery; that Clemons,
claiming to own three-fourths of the capital stock, absolutely con-
trols the other directors, and it would be useless to seek redress
within the corporation itself; and that he and other directors
are drawing large salaries and are about to move the offices of the
company into another state, are sufficient, upon demurrer, to sus-
tain, in accordance with the prayer of the petition, a judgment of
the circuit court compelling an accounting by Clemons, the can-
cellation of the note held by him, the surrender of the bonds held
by him and the other directors and their return to the company's
treasury, the removal of all the directors, and the appointment of
a receiver for the properties.

4. ———: Fraudulent Inception: Misappropriation of Funds: Receiver:
   Suit by Stockholders. Where the corporation was conceived in
   fraud and never has at any time been a solvent or going concern,
   and by the fraudulent manipulation of its affairs its properties
   have been appropriated and wasted by its directors, who are about
   to appropriate its remaining assets to the payment of fraudulent
   notes issued to the directors without consideration, an action to
   prevent further waste, to cancel its fraudulent notes, to remove
   its directors and for the appointment of a receiver, may be main-
   tained by stockholders who, without knowledge of the true facts
   and by positive misrepresentations of said directors, were induced
   to buy large quantities of its stock and bonds.

5. ——— ———: ———: ———: ———: Trustee as Defendant.
   Suing as stockholders in an action brought against a corporation
   and its directors, alleging fraudulent misappropriation of its as-
   sets by them and asking for the cancellation of illegal notes and
   the appointment of a receiver in aid of its prayer for an account-
   ing and to prevent further waste, the plaintiffs are not required to
   invoke the aid of the trustee named in the company's mortgage
   given to secure bonds issued by it, where, although their interests
   are adverse to those of the trustee, they seek no relief against the
   trustee or the properties owned by the corporation and covered by
   the mortgage.

6. ———: Misappropriation of Assets: Jurisdiction: Venue. Where
   the corporation maintains an office within the territorial juris-
   diction of the circuit court, service of summons upon it and its

principal officers may be obtained there, a part of its assets, including its important books and records, are kept there, and wherein the plaintiffs reside, the court has jurisdiction of a suit to compel the cancellation of fraudulent notes, to compel an accounting, to remove its directors and to appoint a receiver to prevent further waste, although the lands, which constitute its principal assets, are situate in another county and beyond its territorial jurisdiction.

7. ———: ———: ———: ———: **Waiver: By Answering Over.** By answering over defendants waive any question of the court's jurisdiction over their persons, want of capacity in plaintiffs to sue, and all such questions.

8. ———: **Receiver: Notice.** Where the record shows that defendants were notified that a hearing of plaintiffs' verified petition for the appointment of a receiver of a corporation was set for a certain day, that they were in court on said day, that they were in court upon the adjournment and continuance of such hearing to a subsequent date, and that the order appointing a receiver was made on the next day, they cannot be heard to contend that the receiver was appointed without notice to them.

9. ———: ———: **Appointment: Appeal: Supersedeas Bond: Jurisdiction of Another Circuit Court.** Where one circuit court, having territorial jurisdiction of the parties, has, after service of summons on defendants and a hearing, rendered judgment appointing a receiver for the properties of a corporation, whose principal assets consist of lands lying in another county, and an appeal, supported by a supersedeas bond, has been taken from said judgment, the circuit court of the county in which the lands lie has no jurisdiction, pending said appeal, to appoint another receiver for the same properties. The appeal and the supersedeas bond took the property out of the hands of the receiver appointed by the judgment pending the appeal from the order refusing to vacate, but they did not vacate his appointment.

10. ———: ———: ———: ———: ———: ———: **New Cause for Appointment.** Where a circuit court, having territorial jurisdiction, has appointed a receiver, and an appeal, supported by a supersedeas bond, has been taken from its order overruling a motion to vacate the appointment, the circuit court of the county wherein are situate the lands of the corporation, which constitute its principal assets, has no jurisdiction to appoint another receiver for the properties, although the suit has been brought by the trustee named in a deed of trust given on the corporation's said lands to secure the payments of its bonds, wherein it was provided

that it might be foreclosed upon the appointment of a receiver, and in its petition the trustee, who was not a party to the other proceeding, alleges that a receiver has been appointed therein, and prays judgment for foreclosure, and a stockholder, who is the owner of some of said bonds, by motion intervenes and asks for the appointment of a receiver.

11. ——: ——: ——: ——: ——: ——: **Receiver Ordered to Enter Appearance.** Nor did the court first appointing the receiver by ordering its said receiver to enter his appearance in the cause pending in said other court surrender its jurisdiction, said order being entirely consistent with an assertion of jurisdiction by the court making it.

Special Appeal in Buerck Case from St. Louis City Circuit Court.—*Hon. Charles B. Davis,* Judge.

APPEAL DISMISSED.

Appeal in Trust Company Case from Butler Circuit Court.—*Hon. Almon Ing,* Judge.

REVERSED.

*William E. Cloyes* and *John A. Hope* for appellants in Buerck Case.

(1) Appointment of a receiver without notice to defendants and without a chance to be heard in opposition·is unauthorized. No such abuse of judicial power should receive any sanction. (2) The receiver was appointed May 12, upon *ex parte* hearing, had without notice to defendants Pierce and Redhead, who were on the board of directors; also without any notice to the other defendants unless a summons to appear at 10 a. m. May 5, means 2 p. m. May 12, or unless information alleged to have been given to a member of the bar not· connected with the case, or the pretense of a friendly witness that he "advised him [Clemons] today that the hearing was on" at "about 10:30" by "a telegram to the Great Northern Hotel at Chicago" was sufficient

in law to give the circuit judge power to do the things he attempted in this case, namely, eviction of defendant company, its officers, directors, stockholders, and the trustee in the mortgage securing its bonds, from any and all connection with the property, removal of its officers and directors, virtual cancellation of every right of defendants Hull, Pierce, Redhead, Clemons and McPherson as stockholders and bondholders, and the vesting of the title, possession and administration of great and valuable properties, and business and affairs of the company, with its books, papers and records, in a so-called receiver under $1,000 bond "approved by the court." (3) If plaintiffs' petition fails to state a case in equity, appointment of a receiver is unauthorized and should be set aside. "Absent a cause of action stated in the main case, there is no ground for the appointment of a receiver." Thompson Price v. Bankers Trust Co., 178 S. W. 749; Cantwell v. Lead Co., 199 Mo. 42. (4) And the petition in this case does not state any cause of action. (a) Because the petition fails to show that plaintiffs, before filing the suit, made any effort within the defendant corporation for correction of their alleged grievances. So far, at least, as plaintiffs sue to protect their alleged rights as stockholders, it is a necessary prerequisite that they show "that all remedies within the corporation itself have been exhausted." Albers v. Merchants Exchange, 45 Mo. App. 218; Blades v. Mercantile Co., 154 Mo. App. 359; Virginia v. Fisher, 104 Va. 121; Thompson Price v. Bankers Trust Co., 178 S. W. 749. (b) Because the petition fails to show that plaintiffs had requested the trustee in the mortgage securing the bonds in question to sue and that the trustee had refused to do so. Plaintiffs sue as bondholders as well as stockholders. Their petition discloses that the bonds, which are held by others as well as themselves, are secured by mortgage on the Wayne and Butler County lands. It is to be assumed, of course, that, like all corporate mortgages securing bond issues, there is a

trustee in the mortgage. Hence the petition is fatally defective in not showing refusal of the trustees to sue after request by plaintiffs so to do. 2 Perry on Trusts (6 Ed.) sec. 886; 2 Black on Rescission & Cancellation, sec. 662; Morgan v. Pac. Ry., 21 Blatchf. (U. S.) 134; First Nat. Bank v. Radford Trust Co., 80 Fed. 574; O'Bierne v. Allegheny Co., 15 N. Y. 372, 383; Virginia v. Fisher, 104 Va. 133, 139; Young v. Haviland, 215 Mass. 122; Consolidated Water Co. v. Diego, 89 Fed. 272; Siemers v. Kleeburg, 56 Mo. 201; Evismon v. Evismon, 59 Mo. 370; Lilly v. Menke, 126 Mo. 214; Roden v. Helm, 192 Mo. 71, 95. (c) Because the petition fails to make the trustee in the mortgage a party to the suit. So far as the petition undertakes to state any case concerning the bonds, it seeks to compel surrender and cancellation of the bonds alleged to be held by defendants Clemons and McPherson. To such an action the mortgage trustee is a necessary party. Authorities above. And especially in this case, where it was sought to place the mortgaged property in the possession and control of a receiver, the mortgage trustee was an indispensable party. The attempt of the learned trial judge, in the absence of this indispensable party, to establish a receivership over the mortgaged property cannot be upheld in law. The presence of the trustee as party to the suit was just as necessary as if it had been an action to foreclose the mortgage. 1 Wiltsie on Mortgages (3 Ed.) sec. 132; 2 Perry on Trusts (6 Ed.) sec. 873; 2 Jones on Mortgages (6 Ed.) secs. 1397, 1399; Barry v. Mo. Pac. Ry., 22 Fed. 631; Tovener v. Bennett, 21 W. Va. 656, 673; Harlow v. Mister, 64 Miss. 25; Mayne v. Cohn, 76 Miss. 590; Caylor v. Cooper, 165 Fed. 757. (d) Because the petition shows on its face that the property in which plaintiffs claim to be interested as mortgage bondholders, and over which they want a St. Louis receivership established, is not located in the city of St. Louis, but is in the counties of Wayne and Butler —25,000 acres of land. The St. Louis Circuit Court had

no jurisdiction to summarily eject defendant company from the possession of these lands, located wholly outside the St. Louis Judicial District, and transfer the possession and control thereof to a receiver appointed by it. Sec. 1179, R. S. 1919; High on Receivers (3 Ed.) sec. 739, p. 686; Matter Steamboat Tow Co., 139 N. Y. 172; Mills Bros. v. Perkins, 154 Mo. 638; Carr v. Lewis Coal Co., 96 Mo. 149; State v. Railroad Co., 15 Fla. 201, 284; Atkins v. Wabash, 29 Fed. 161, 172; Hollbush v. Blake, 119 Ind. 349; Commonwealth v. Order of Vestal, 156 Pa. St. 172; Texas & Pac. Ry. v. Gay, 86 Tex. 571, 25 L. R. A. 52. (e) Because, so far as the petition discloses the case, plaintiffs have other entirely adequate remedies for the alleged wrongs of which they complain. The directors of defendant company are accused of mismanagement in vague, general and indefinite allegations. But it is nowhere pretended that any director or officer of the company is insolvent, or that any judgment for damages which plaintiffs might obtain could not be readily collected. In this situation, the petition states no case in equity, certainly no sufficient basis for an order appointing a receiver. "It is fundamental that the hand of the courts will be laid upon property of the owner and that owner evicted from possession thereof . . . only when there is no other adequate remedy" (Thompson Price v. Bankers Trust, supra), and plaintiffs "must show that there is no other road to redress" (Albers v. Exchange, supra). Alderson on Receivers, sec. 487; Blades v. Milling Co., 154 Mo. App. 350; 34 Cyc. 23, 25; High on Receivers (3 Ed.) sec. 755, p. 699; Albers v. Moffitt, 187 S. W. 903; Miller v. Scammon, 52 N. H. 609. (f) Because the petition consists merely of general indefinite allegations of fraud. This will not suffice. The specific facts constituting the alleged fraud must be stated distinctly and positively. Ennis v. Padgett, 122 Mo. App. 545; Hart v. Hannibal Ry. Co., 65 Mo. 509; Nichols v. Stevens, 123 Mo. 117; Coal Co. v. Haldeman, 254 Mo. 639; 2 Black on Rescission & Cancellation, secs.

110 and 665; Atlantic Delaine Co. v. Jones, 94 U. S. 214.
(g) Because the petition, when analyzed and tested by
the settled principles of equity jurisdiction, does not
state any case that a court of equity can properly take
any cognizance of. (5) The evidence, both that sub-
mitted on the hearing of the application for a receiver
and that heard on the motion to set aside the appoint-
ment, makes it all the more apparent that the order
appointing the receiver was illegal and invalid, and that
the learned trial court erred in overruling the motion
to revoke, because: (a) Not only is defendant com-
pany's real property beyond the territorial jurisdiction
of the St. Louis Circuit Court, but so is its personal
property. The habitat or domicile of defendant cor-
poration is Greenville, Wayne County; it is thus fixed
in its corporate charter, which is conclusive. Secs. 9734,
10144, 10145, 10146, R. S. 1919; Bank of Malden v. Waye
Heating Co., 198 Mo. App. 606; Pelton v. Northern
Transp. Co., 37 Ohio St. 450; Rossie I. Works v. West-
brook, 59 Hun (N. Y.) 345; Woods Gold Mining Co. v.
Royston, 46 Colo. 191; Union Steamboat Co. v. Buffalo,
82 N. Y. 351; Oswego Starch Factory v. Dolloway, 21
N. Y. 449; Re Federal Contracting Co., 212 Fed. 688;
First Nat. Bank v. Wilcox, 72 Wash. 473; Malmo v.
Washington Co., 79 Wash. 534. And the *situs* of per-
sonal property is the domicile of the owner. See
"Situs," 7 Words & Phrases Judicially Construed, p.
6525; Stephens v. Boonville, 34 Mo. 325. (b) Under
the law as well as by reason of the terms of the mortgage
and the powers and duties therein conferred upon the
trustee, individual bondholders cannot bring an action
to subject such additional or after-acquired property to
the lien of the mortgage, unless it is shown that the
trustee has been requested to sue and that it has failed
or refused to do so. 3 Fletcher on Corporations, sec. 1330.

*W. G. Carpenter* and *Chas. F. Krone* for appellants
in Trust Company Case.

(1) The trustee represents all bondholders as a class. In the absence of bad faith on the part of the trustee, petitioner Boll had no right to be made a party to the action nor to secure the appointment of the receiver. Rumsey v. Peoples Railroad Co., 154 Mo. 215; Farmers L. & T. Co. v. Ry. Co., 53 Fed. 182; Richter v. Jerome, 123 U. S. 233, 246; Young v. Haviland, 215 Mass. 120; Bank v. Cape Cod Co., 166 Mass. 550, 567; 16 L. R. A. (N. S.) 1006, note; 14-a C. J. secs. 2612 (p. 640), 2723 (p. 691), 2725, 2727, 2739, (p. 702), 2742, 2753. (2) Petitioner Boll was not an original party to the suit, nor authorized to intervene in same, nor did he file any petition seeking relief in the case; but he merely injected a motion therein for the appointment of a receiver. No cause of action for the appointment of a receiver was stated. Therefore, the court should not have made the appointment, the motion to strike his application from the files should have been sustained, and the motion to vacate should have been upheld therein. (3) Where one court has assumed jurisdiction and appointed a receiver, another court of co-ordinate jurisdiction cannot interfere. The possession taken by the receiver in pursuance of the order of the Circuit Court of the City of St. Louis is the possession of that court. Such property was *in custodia legis*. In the subsequent proceeding for a receiver the Butler County Court had no authority to oust this jurisdiction. State ex rel. v. Reynolds, 209 Mo. 161, 15 L. R. A. (N. S.) 963, 14 Ann. Cas. 198; Wehrs v. Sullivan, 217 Mo. 167; Reed v. Railroad Co., 209 S. W. 892; Colburn v. Yantis, 176 Mo. 670; Rogers & Baldwin Co. v. Cleveland Co., 132 Mo. 442; Heath v. Railroad, 83 Mo. 617; State ex rel. v. Ross, 122 Mo. 435, 462; Cabe v. Ricketts, 111 Mo. App. 105; Mishawaka Mfg. Co. v. Powell, 98 Mo. App. 530; State v. Landis, 173 Mo. App. 198; State v. Williams, 221 Mo. 227, 268; 15 C. J. p. 1134 (sec. 583), pp. 1137, 1140 (sec. 586); Wabash Railroad v. College, 208 U. S. 38; Farmers Trust Co. v. Railroad Co., 177 U. S. 51; Cole-

man v. Callon, 184 Ind. 204; Bank v. Bryan, 76 W. Va.
481; High on Receivers (4 Ed.) sec. 48, 140, 141; State
ex rel. v. McClure, 17 N. W. 694. (4) The supersedeas
bond filed on the appeal from appointment of the
temporary receiver merely restored the possession of
the property to the company pending appeal, but did not
revoke the receivership or dissolve the injunction. The
property is still subject to the control of the court pend-
ing the appeal, and the right of possession of the re-
ceiver is held in abeyance and relates back on affirmance.
No other court could supplant the jurisdiction *ad interim.*
R. S. 1919, secs. 1469, 1473; State ex rel. Sullivan v.
Reynolds, 209 Mo. 161, 174; State ex rel. v. Herzil, 137
Mo. 435; State ex rel. v. Klein, 137 Mo. 673; State ex rel.
v. Hennings, 194 Mo. App. 545; State ex rel. Craig v.
Woodson, 128 Mo. 497, 518; State ex rel. v. Dillon, 96
Mo. 56; State ex rel. v. Garesche, 210 S. W. 900.

*Henson & Woody* for *Emil E. Penzel,* Receiver, and
*Chas. P. Boll,* Intervener.

(1) As a part of the lands conveyed by the mort-
gage are situate in Butler County, the circuit court of
that ·county, upon the filing of plaintiff's petition, ac-
quired jurisdiction of the subject-matter. The voluntary
appearance of the defendants, the intervening petition-
ers and Chas. P. Boll, gave the court jurisdiction of the
parties. Having acquired jurisdiction both of the sub-
ject-matter and of the parties, said circuit court had
the power and authority to appoint a receiver of the
properties covered by the mortgage, as provided for in
said mortgage, and as prayed for by plaintiff, the inter-
vening petitioners and Chas. P. Boll. R. S. 1919, secs.
1179, 2224; Chouteau v. Allen, 70 Mo. 290; Rodney v.
Gibbs, 184 Mo. 1; Tuttle v. Blow, 163 Mo. 625, 644.
(2) The power to appoint a receiver, even when not
authorized by the terms of the mortgage sought to be
foreclosed, rests in the sound discretion of the court,

and its action will not be reviewed unless it appears that there has been an abuse of that discretion. R. S. 1919, sec. 1148; Stark v. Grimes, 88 Mo. App. 409; State ex rel. v. Loan Assn., 159 Mo. 102; Cantwell v. Lead Co., 199 Mo. 1. (3) The action of the court in appointing a receiver of the property pending the foreclosure proceeding, and its refusal to vacate said order, are not before this court for review, no exceptions being saved thereto. Wolff v. Ward, 129 Mo. 129, 145; Cantwell v. Lead Co., 199 Mo. 1; Geers v. Bilyeu, 199 S. W. 138; Piano Co. v. Gordon, 207 S. W. 233; Rumsey v. Railroad, 154 Mo. 215, 248; Tuttle v. Blow, 163 Mo. 625, 644. (4) For the purpose of this proceeding, the Circuit Court of the City of St. Louis surrendered its jurisdiction, if any it had, by ordering its superceded receiver to enter his appearance and become a party to this suit. (5) The court did not abuse its discretion in appointing a receiver to take charge of these properties pending the foreclosure suit. Stark v. Grimes, 88 Mo. App. 409; Abramsky v. Abramsky, 261 Mo. 117; Tuttle v. Blow, 163 Mo. 625. (6) It was not error to permit Chas. P. Boll to file his motion in this cause. R. S. 1919, secs. 1157, 1158, 1159, 1160; Wolff v. Ward, 104 Mo. 127. (7) Intervening petitioners have no standing in this court to complain of the action of the trial court in appointing a receiver. Bensieck v. Cook, 110 Mo. 173; Lilly v. Menke, 143 Mo. 137; State to use v. O'Neill, 151 Mo. 67; Reiger v. Faber, 116 Mo. App. 123.

DAVID E. BLAIR, J.—The first of these two cases, which will be referred to as the "Buerck Case," comes here upon a special appeal granted by one of the judges of this court from an order of Division No. 14 of the Circuit Court of the City of St. Louis, overruling a motion of defendant Mid-Nation Iron Products Company to vacate the appointment of a receiver.

The second of said two cases, which will be referred to as the "Trust Company case," comes here upon an

appeal granted to intervening plaintiffs and the receiver defendant by the Circuit Court of Butler County from an order refusing to set aside and vacate its order appointing E. E. Penzel receiver for the same property involved in the Buerck Case. The two cases were separately briefed and have been consolidated in this court and were argued and submitted together.

I.  In the Buerck Case the petition in substance alleged that plaintiffs, respondents here, are bondholders and stockholders in defendant Mid-Nation Iron Products Company, herein referred to as "Iron Products Company," and bring the action on behalf of themselves and others similarly situated; that said Iron Products Company is a Missouri corporation, having its principal office and place of business in the city of St. Louis; that on or about January 20, 1917, defendant Earl A. Clemons and others caused said Iron Products Company to be organized as a corporation as an instrument for their fraudulent purposes and to take title to a certain tract of iron-ore-bearing land in Wayne and Butler counties in this State, comprising about 25,000 acres; that the incorporators of said Iron Products Company did not own said land at the time said corporation was organized, and falsely swore in the articles of association that they did own the same and that it was of the value of $2,000,000; that said corporation did not acquire deed to said land until several months thereafter; that defendant Clemons and his associates caused stock to be issued to themselves as follows: $1,614,700 par value to Earl A. Clemons; $5,000 par value to William R. Leeper; $5,000 par value to W. F. Groetzinger; $100 par value to J. F. Lindsay; $100 par value to E. Abby Lindsay; $100 par value to F. J. Quinn.

Said petition then proceeded to allege that none of the above named persons invested any real money in said Iron Products Company; that they proceeded to issue bonds in the sum of $1,000,000 secured by mortgage upon said lands and that defendant Clemons sold

$160,000 in par value of said bonds before he had secured title in the corporation to more than a small part of said lands; that Clemons and his associates paid to Concrete Investment Company of St. Louis the sum of $120,000 and to a St. Louis bank the sum of $18,000, which represented the total purchase price of said lands, and thereafter had title conveyed to one Cochran, trustee, and by him to said Iron Products Company.

That, upon the conveyance of the property to Iron Products Company, defendant Clemons caused said corporation to issue to himself promissory notes aggregating $220,000, secured by double that amount in face value of the first mortgage bonds of said corporation as collateral, without any consideration whatever therefor to said corporation; that while said corporation property cost defendant Clemons and his associates only about $140,000, it thereupon became and was subject to a $2,000,000 capital stock issue of said corporation, $220,000 liability to defendant Clemons on said notes and a million dollar bond issue; that out of $160,000 first received from the sale of bonds, $138,000 went to apply on the purchase price of the lands, and $22,000 thereof was wrongfully appropriated by said Clemons to his own use, in addition to the $220,000 note.

That the $160,000 of bonds were sold to Mid-Vale Steel Company, and the real consideration for the payment of the money by that company was not the security supporting said bonds, but was a contract from the Iron Products Company giving such Steel Company the right to prospect, mine and take ore from the land, and that if said company was not satisfied with the land from an ore standpoint it might cancel the contract and retain the bonds; that after spending a large amount of time and money said Steel Company rejected the property as not being a satisfactory ore proposition; that after such rejection, defendant Clemons began selling such bonds of the Iron Ore Products remaining in its treasury as he was able to sell to plaintiffs and others sim-

ilarly situated "under every variety of false representa-
tion which could be made," and sold to plaintiffs and such
others approximately $100,000 of such bonds and ap-
plied the greater portion of the proceeds from such
sales upon the aforesaid $220,000 note payable to him-
self, so issued to him by the corporation without con-
sideration therefor, and thereby reduced the alleged
amount of said note to approximately $140,000; that all
but a small amount of the remainder of said bonds have
under various pretexts been converted by defendant
Clemons and his associate, defendant Thomas B. McPher-
son, to their own use and "have been traded, bartered, ex-
changed and pledged by them in a great variety of ways
and manner unknown to these plaintiffs" and not dis-
closed by the books of the corporation, and are now out-
standing and an apparent lien against the corporation;
that there is now an apparent outstanding indebtedness
against the corporation in excess of $700,000 and that
the property is worth no more than when it was pur-
chased in the year 1917.

The petition then alleges that no mining machinery
has been placed on the property or any buildings erected
thereon and that no mining or development work has
been done thereon and no ore sold therefrom, and that
expenses have at all times been paid from proceeds of
bonds sold to plaintiffs and others similarly situated,
and that defendant and his associates and defendant
directors of said corporation are selling and attempting
to sell the bonds remaining in the treasury for the pur-
pose of maintaining their salaries and other expenses
and for application upon the said Clemons note.

"That the defendant Clemons to date pretends to
hold and own approximately $1,400,000 of the capital
stock of said company, that he holds and pretends to
own $140,000 of collateral indebtedness against said
property, that he holds or pretends to own a large
amount of the bonds of said company, which plaintiffs

charge to be in excess of $100,000; that he has already paid himself, as aforesaid, $235,000 on the alleged purchase price of said property, has drawn a munificent salary from said company all these years, all without ever having invested a dollar in actual money in the said company and without ever having done or performed any services of benefit to said company or to anyone else, except himself.

"That defendant Thomas B. McPherson has been an active aider and participant in all the fraudulent acts of said defendant Clemons heretofore enumerated, has received from said company a very large amount of the bonds of said company without any consideration whatever to said company for the receipt of same, is selling or attempting to sell, is pledging or attempting to pledge, said bonds for his own personal advantage wherever he may be able to do so, and is in addition thereto claiming to own $75,000 of the outstanding stock of said company; that defendants James N. Hull, James P. Pierce and J. Hartzler Redhead are nominal stockholders in said company and constitute the board of directors, were placed there by and with the connivance and solicitation of defendant Earl A. Clemons and defendant Thomas B. McPherson, and are used merely to further the ends and purposes of defendants Earl A. Clemons and Thomas B. McPherson.

"That a bankruptcy petition has been filed against defendant Earl A. Clemons, that he owes a very large amount of money, and that he is attempting to use, and will attempt to use, the bonds of this company now in his possession and his so-called note indebtedness of this company as aforesaid to offset and pay up the debts claimed against him, unless a court of equity immediately intervenes and appoints a receiver to look after and protect the interests of the said Mid-Nation Iron Products Company in its claim to said bonds and in its defenses against the said pretended indebtedness of said Clemons."

Said petition then alleges that 46,000 acres of additional land in Wayne and Butler counties were .conveyed by Concrete .Investment Company to one Cochran, acting as a dummy for title for said Clemons and his associates, for $77,478, paid for by three notes secured by deed of trust and no actual money, and that said Cochran placed thereon a second deed of trust for $172,522, securing five other notes executed by him, and then conveyed the equity in said land to Iron Products Company for a consideration of $325,000 of the capital stock of said corporation, and as a part of the consideration said corporation assumed and agreed to pay the said two deeds of trust; that said defendant Clemons then caused two of the notes secured by the second deed of trust, aggregating $110,000, to be placed in the hands of defendant McPherson, who thereupon, in conjunction with defendant Clemons, turned said notes over to the Iron Products Company and received in lieu thereof $110,000 of its first mortgage bonds; that the remaining three notes, secured by said second deed of trust on said 46,000 acre tract, of approximately $20,000 each, are in litigation in the city of Chicago; that no attempt was made to pay the notes secured by the first deed of trust on said 46,000 acres of land and said deed of trust was foreclosed and Iron Products Company lost all rights in said land; that by .said transaction said corporation obtained nothing whatever, and parted with $375,000 of its capital stock to defendant Clemons and $110,000 of its first mortgage bonds to ·defendant McPherson, "all of which plaintiffs say is a fraud on their rights as bondholders and stockholders."

"Plaintiffs state that they purchased their stock and bonds without knowledge of the foregoing facts, or without having any opportunity to gain such knowledge; that the said facts were not of record in the office of the company, but were all zealously concealed by the officers and directors thereof; that the purchase price of said property was represented to be very near many

times that actually paid for it by the said directors and officers and that the money so paid by these plaintiffs was going into the purchase of machinery and the development of the property and not into the pockets of the officers and directors thereof, as herein charged. That it would be useless to apply for redress to the company itself, as the officers and directors thereof are the wrongdoers and are in control of same.

"That they are informed and believe that the said Earl A. Clemons and Thomas B. McPherson and those whom they dominate on the board of directors are conspiring to move and remove the offices of this company to the city of Chicago, in the State of Illinois, and that the jurisdiction of this court will be thereby deprived unless this court take immediate action to prevent same; that the said Clemons by and through his great amount of capital stock controls absolutely the election of the board of directors and all questions brought up for action at all stockholders' meetings; that the said stock so outstanding in his name is in itself a fraud upon the rights of these plaintiffs; that the notes so issued by Clemons in the name of this corporation to himself in payment of the alleged purchase price of said property are wholly without consideration, are a fraud upon the rights of these plaintiffs and ought to be cancelled by this action; that the stock so held by Clemons is wholly without consideration, is issued in contravention of the statutes of the State of Missouri, is a fraud upon the rights of these plaintiffs and ought to be cancelled; that the said Earl A. Clemons and the said Thomas B. McPherson and their aids on this board of directors, whom they dominate, are detrimental and injurious to this corporation and to the rights of all legitimate bondholders and stockholders herein; the course they are pursuing is ruinous to said company and profiting themselves only, and that such profit so received is illegitimate, fraudulent and unconscionable and ought to be checked and prohibited and the said defendants removed as di-

rectors from this company, in accordance with the provisions made by the statutes of the State of Missouri, and all other and further adequate relief furnished plaintiffs which the evidence in this cause may disclose as necessary.

"Wherefore plaintiffs pray that the said pretended indebtedness of the said Clemons as hereinbefore set forth be cancelled, that an accounting be required of the said Clemons for all moneys heretofore received by him on said pretended indebtedness, and that a judgment be entered against him for same; that he be ordered and directed to surrender the bonds now in his custody so surreptitiously taken from the treasury of this company, and that an accounting be had with the said McPherson; that the said officers and directors be removed as officers and directors of said company and be barred from further participating in the management or conduct of the affairs of said company, and that a receiver be appointed to administer upon the affairs of said corporation pending the further orders of this court; that in view of the premises herein stated, it is necessary and essential that a receiver be immediately appointed to appear in the bankruptcy proceedings heretofore set forth as pending against the said Earl A. Clemons.

"That an order to show cause be issued, returnable forthwith, requiring the said defendants herein to show cause, if any they have, why pending a final hearing hereon a receiver should not be immediately appointed to take charge of the Mid-Nation Iron Products Company and to conserve its assets from further dissipation and wasting and to properly protect and care for the interests of said corporation, and for such other and further relief as to the court shall seem meet and just in the premises."

Upon the filing of said petition on April 29, 1920, the cause was assigned to Division 14, presided over by Honorable Charles B. Davis, and the following order was made:

"Now at this day come the plaintiffs by their attorneys and submit to the court their verified petition this day filed, praying, among other things, for the appointment of a receiver, and the court having seen and examined said petition, and being sufficiently advised thereof, doth order that each of the defendants be and appear in Division No. 14 of this court on Wednesday, May 5, 1920, at 10 a. m., then and there to show cause, if any they have, why a receiver should not be appointed for the defendant, Mid-Nation Iron Products Company, a corporation, to take charge of and to conserve the assets of said corporation from dissipation and wasting and to protect and care for the interests of said corporation."

The Sheriff of the City of St. Louis served said notice by delivering a copy thereof to Earl A. Clemons, president of the Mid-Nation Iron Products Company, and to defendants Clemons and McPherson on April 29, 1920, and a copy thereof to defendant Hull on May 1, 1920, and failed to find defendants Pierce and Redhead in the city of St. Louis. On May 13, 1920, plaintiffs were given leave to and did amend the prayer of their petition by asking for a temporary injunction, restraining defendants Clemons and McPherson from acting as officers of the corporation and removing its property or selling, assigning or hypothecating its bonds, notes or other obligations held by them. On the same day the said Circuit Court of the City of St. Louis granted such restraining order and appointed Odon Guitar, Jr., of the city of St. Louis, as receiver. The order recited that the plaintiffs were present and offered testimony in support of the petition and that defendants made default.

On May 15, 1920, defendant Iron Products Company and defendants Clemons and McPherson filed their joint motion to set aside the order granting an injunction and appointing said receiver, but since we have concluded that only the record proper is before us, it is

improper to consider the averments of this motion or the proof offered in support thereof.

On June 21, 1920, defendant Iron Products Company and defendants Clemons and McPherson filed their separate demurrers to the petition, and on July 1, 1920, the trial court overruled said demurrers, and also on the same day overruled the motion of the defendants to set aside its order appointing a receiver and granting an injunction. On May 18, 1921, said defendants filed their separate answers to said petition. On May 9, 1921, an authenticated copy of the record made in the Circuit Court of the City of St. Louis was filed in this court, and on June 11, 1921, a special appeal under the provisions of Section 1474, Revised Statutes 1919, was granted by one of the judges of this court, and on June 17, 1921, supersedeas bond was filed and approved.

II. The petition in the Trust Company case recited the corporate capacities of that company and of the Mid-Nation Iron Products Company, and the appointment of Odon Guitar, Jr., as receiver, by Division No. 14 of the Circuit Court of the City of St. Louis, in the Buerck Case, and *that said receiver is acting as such receiver by virtue of said appointment.*

Said petition then alleged that the Iron Products Company on July 19, 1917, executed and delivered to the Trust Company its first and general mortgage deed of trust, conveying to the Trust Company as trustee the 25,000-acre tract of land above mentioned to secure a total authorized issue of its first and general mortgage gold bonds in the aggregate amount, face value, of $1,000,000, describing said bonds in detail and the amount and terms thereof; that said Iron Products Company issued $750,000 of the authorized million dollars of said bonds, and same were certified by the trust company as trustee and delivered to said Iron Products Company and issued by said corporation, and that said bonds are now outstanding and unpaid; that said deed of trust

provided for foreclosure thereof upon the written re-
quest of one-fifth of the outstanding bonds in the event
of default in payment of interest or principal when due
or default in other conditions of said deed of trust in
specified respects, *or in the event of the appointment of a
receiver* of the corporation or the property covered by
the mortgage, and other conditions usually found in
similar instruments providing for notice, public sale,
deed to purchaser, etc.

Said petition then alleged defaults in several par-
ticulars on the part of the Iron Products Company, in-
cluding the allegation that *said corporation caused or
allowed the appointment of a receiver* by the Circuit
Court of the City of St. Louis for the property covered
by said mortgage, and prayed for judgment and foreclos-
ure of the mortgage and equity of redemption of said Iron
Products Company and sale of the property, and for the
appointment of a receiver, and that summons issue to
defendant Iron Products Company and Odon Guitar, Jr.

On October 7, 1920, Odon Guitar, Jr., filed answer
as receiver, entering his appearance, denied each and
every allegation of the petition, and advised the court
that it was to the interest of stockholders and bondholders
that the receiver's administration be closed as rapidly
as practicable, and asked that the cause be set down and
heard at that term of court.

Thereafter, by leave of court, John F. Green and
others, as a committee of bondholders of Iron Products
Company, filed an intervening petition, making in a
general way the same allegations made in the petition
in the Buerck Case, and recited the appointment of Odon
Guitar, Jr., as receiver by the Circuit Court of the City
of St. Louis for property involved in the Trust Com-
pany Case. Said Green and others prayed to be made
parties plaintiff, and that the relief prayed for by the
Trust Company be granted, and "that a hearing be had
on all the bonds and the title thereto in the individual
holders, particularly those now claimed by the said Earl

A. Clemons or his wife, Rose B. Clemons, or the said
Thomas B. McPherson, or their assigns.''

At the July term, 1921, of said Butler County Cir-
cuit Court, one C. P. Boll filed a motion, asking for the
appointment of a receiver in the, Trust Company case,
alleging that he was the owner of $3,300 of the bonds of
the Iron Products Company and $1,650 of its stock; al-
leged that the value of the property as mining and
timber lands was approximately $1,000,000 and sufficient,
if properly managed, to pay off the debts against the
corporation and leave a surplus for the stockholders;
that the holders of the stock and bonds of said corpora-
tion were in danger of losing their investments, unless
the court took possession of said property through its
receiver appointed by the court; that owing to general
financial conditions prevailing at the time, the property
should not then be sold, but a receiver was necessary
to preserve such property, and asked that the prayer
for a receiver contained in plaintiff Trust Company's
petition be granted, etc.

On July 23, 1921, Odon Guitar, Jr., filed his motion
to strike from the files the motion of said Boll for the
appointment of a receiver, on the ground that said Boll
had no standing in court and because the court had no
power to appoint a receiver on his petition; that said
Guitar was duly appointed receiver of said property by
the Circuit Court of the City of St. Louis in the Buerck
Case, and said St. Louis Circuit Court had full juris-
diction of the matter and of all issues involved therein,
except as such jurisdiction was affected by the appeal
from the order of said Circuit Court in the City of St.
Louis refusing to vacate the appointment of a receiver;
that no appointment of a receiver by the Butler County
Circuit Court was necessary, even if one had not al-
ready been appointed by the Circuit Court of the City
of St. Louis.

On July 25, 1921, the Circuit Court of Butler County
appointed E. E. Penzel as its receiver for the same pro-

perty, and the parties to the suit were enjoined from interfering with the property placed in the hands of said receiver or with his custody thereof. On the following day John F. Green and others, intervening plaintiffs, and Odon Guitar, Jr., filed their motion to vacate and set aside said order appointing Penzel as receiver, because of want of jurisdiction of the Butler County Circuit Court to make such appointment, for the reason that a prior suit was pending in the Circuit Court of the City of St. Louis (referring to the Buerck Case) and that such court had theretofore appointed a temporary receiver and an appeal was pending in relation thereto in the Supreme Court, and urged other reasons not necessary to relate here. This motion was overruled, and on the same day an appeal from such order was granted.

III. In the Buerck Case respondents contend there is nothing before us for consideration except the record proper, and that the only questions for our consideration are whether the petition stated facts justifying the appointment of a receiver, and whether the Circuit Court of the city of St. Louis had jurisdiction over the subject-matter.

The bill of exceptions was allowed and filed October 3, 1921. The special appeal was granted June 11, 1921. In Brockmann v. United Railways, 271 Mo. 696, this Division held that the special appeal granted under Section 2043, Revised Statutes 1909 (now Sec. 1474, R. S. 1919), must be determined upon the record existing when the appeal was allowed, and which shows the errors complained of and to be determined when the case is heard; that the statute provides that such appeal should not be granted by a judge of an appellate court "unless it appear from an inspection of a copy of the record that error was committed by the trial court" and if a copy of the evidence had not at that time been approved and filed in the trial court, no error, except errors in the record proper, can

*Special Appeal Existing Record.*

be considered when the case is heard in this court. The rule laid down in that case seems to be controlling and to render it unnecessary and improper for us to con-

*Motion to Vacate.*     sider anything not part of the record proper. Even the motion to vacate the appointment of the receiver is no part of the record proper and said motion cannot be considered. [Cantwell v. Lead Company, 199 Mo. l. c. 41; Bank v. Bank, 169 Mo. 74.]

According to the allegations of the petition, defendant Earl A. Clemons, conceived and carried out a scheme for creating something out of nothing which rivals the most daring and unscrupulous exploits of the celebrated

*Fraudulent Inception: Misconduct of Directors.*     J. Rufus Wallingford, of "get-rich-quick" fame. It is alleged that Clemons contracted to purchase about 25,000 acres of lands, reputed to be iron-ore-bearing, for $138,000; organized the Iron Products Company with 200,000 shares of common stock of the par value of $10 each, fully paid and non-assessable; issued $1,000,000 of first mortgage gold bonds to be authorized and sold $160,000 of the bonds to another corporation. Out of the proceeds, $138,000 was paid as the purchase price of the lands and Clemons appropriated $22,000 to his own use.

He then had the directors of the company, who were mere dummies and absolutely under his control, execute the note of the corporation, payable to himself, in the sum of $220,000, without any consideration whatever to the corporation therefor, and secured the same by double that amount in face value of the bonds of the corporation as collateral. This left as the entire assets of the corporation the 25,000 acres of land of a value not to exceed the purchase price, subject to the liabilities of the corporation for $2,000,000 authorized capital stock, over 16,000 shares of which were issued to Clemons, $1,000,000 authorized bonds, at least $600,000 of which were outstanding, either sold or pledged, and said $220,000 note.

Not only this, but the petition alleges said Clemons caused 46,000 acres of other land to be conveyed to one Cochran as a dummy for title at the stated consideration of $77,478, paid for by notes secured by first deed of trust on said tract and then caused said Cochran immediately to place thereon a second deed of trust to secure notes aggregating $172,522 and then secured the conveyance of the equity in said lands to the corporation for $325,000 par value of the stock and assumption and agreement to pay the notes secured by said first and second deeds of trust. Clemons then caused $110,000 of the notes secured by the second deed of trust to be placed in the hands of defendant McPherson and, acting together, they turned said notes over to the Iron Products Company and received therefor $110,000 of the bonds of the corporation. The first mortgage on said 46,000 tract was then permitted to be foreclosed and said lands lost to the corporation. The net result of this manipulation was that the corporation parted with $325,000 par value in stock and $110,000 face value in bonds without receiving any benefit therefor whatever, and in addition is engaged in litigation over three notes of approximately $20,000 each given by Cochran and which the corporation assumed and agreed to pay.

It is alleged that the plaintiffs and others paid approximately $100,000 for their stock and bonds without knowledge of the foregoing facts, and Clemons applied the greater portion of this upon the $220,000 note held by him, for which no consideration passed to the corporation, and same was thereby reduced to about $140,000. Nothing has been done by Clemons and the other directors to mine the property, to erect necessary buildings or purchase mining machinery. Clemons as president and his associates as dummy directors completely dominate the corporation and are drawing large salaries and maintaining useless and expensive offices. Clemons owns or claims to own in excess of three-fourths of the capital stock and absolutely controls the acts of the majority of

the directors and it would  be useless to seek redress within the corporation itself.

At the time of the suit, defendants Clemons, McPherson and the directors whom they dominate, were about to move the offices of the company to Chicago, outside the jurisdiction of the court. The relief sought was an accounting between Clemons and McPherson on the one side and the corporation on the other, the cancellation of the note held by Clemons and the surrender of bonds wrongfully held by Clemons and McPherson, and their return to the treasury of the corporation, the removal of said officers and directors and the appointment of a receiver. The subsequent amendment asking for an injunction need not be considered, since the correctness of the granting of such injunction is not involved in this appeal.

The foregoing allegations of the petition, which we assume to be true for the purposes of this appeal, are much stronger than those in the well considered case of Cantwell v. Lead Company, 199 Mo. 1, supra. There a formerly solvent corporation had become insolvent, or of doubtful solvency, through incompetent or fraudulent management. There was a row between majority and minority stockholders for control. Here the corporation was conceived in fraud, and there never has been a moment since its organization when it has been a solvent, going concern. Without knowledge of the true facts and through alleged positive misrepresentations on the part of Clemons and his associates, the plaintiffs invested about $100,000 in the concern. Clemons had misappropriated these assets and was about to appropriate other assets of the corporation by applying same to the payment of the fraudulent liabilities of the corporation and would have made further payments on the note held by himself had not the property been taken out of the control of himself and his dummy directors. These facts, as stated in the petition, cry aloud for the aid of a court of equity in seizing and protecting the pitifully

295 Mo.—19.

few remaining assets and in seeking to recover misappropriated assets of the corporation. The petition clearly stated a cause of action and authorized the appointment of a receiver in aid of the relief sought. Suing as stockholders plaintiffs were not required to invoke the aid of the trustee in the deed of trust. In that capacity their interests were adverse to the interest of the trustee, but no relief was sought against the trustee or against the lands owned by the corporation and covered by the deed of trust.

**Trustee.**

Nor can there be any question concerning the jurisdiction of the Circuit Court of the City of St. Louis over all the property of the corporation for the purposes of the action. The corporation maintained an office there, alleged to be its principal office. [Sec. 1180, R. S. 1919.] In that city service upon the corporation of summons and of the notice of hearing for appointment of receiver could be and rightfully were obtained and three of the other defendants were served with such notice in said city. Appellant concedes plaintiffs resided in the city of St. Louis. A part of the assets of the corporation, including important books and records, were in the city of St. Louis. The fact that the lands are located in Wayne and Butler counties does not exclude the jurisdiction of the St. Louis court in this sort of a proceeding. [State ex rel. v. Dearing, 180 Mo. 53; National Bank v. Construction Co., 227 Pa. St. 354.] The title to the lands is not involved. The purpose of the action is to preserve the assets of the corporation, including the corporation's equity in the lands. By answering over defendants have waived any question of jurisdiction over their persons, want of capacity in plaintiffs to sue and all such questions.

**Venue.**

**Waiver.**

The record shows the court notified the defendants of the hearing set for May 5th. They were in court for such purpose and were also in court upon the adjournment or continuance of such hearing to May 12th and the order made on May 13th. The

**Notice.**

receiver was therefore not appointed without notice. What evidence was given on the hearing when the appointment was made or upon the hearing to vacate the receivership, we are not permitted to consider. It must be held that the trial court was authorized to appoint the receiver, and it is not shown by any record which we can consider that defendants have taken any appropriate steps to vacate such order.

IV. The sole question for determination in the Trust Company Case is the propriety of the appointment of a receiver by the Butler County Circuit Court and the refusal of that court to vacate such appointment. The jurisdiction of that court in the foreclosure suit is not questioned. Part of the lands covered by the deed of trust are in that county. As we have already concluded, the Circuit Court of the City of St. Louis rightfully appointed Guitar as receiver of the Iron Products Company. His appointment was not vacated by the special appeal granted in the Buerck Case. [State ex rel. v. Reynolds, 209 Mo. 161; Reed v. Railway Co., 209 S. W. 892.]

*Jurisdiction of Another Court: Suit Pending.*

The only effect of the supersedeas bond given by appellants in the Buerck Case was to take the property of the corporation out of the receiver's hands, pending the appeal from the order refusing to vacate his appointment. Such appeal did not suspend or vacate the appointment. [State ex rel. v. Reynolds, supra.] The fact of the appointment of Guitar by the St. Louis court was patent on the face of the petition in the Trust Company case, and he was made a defendant as such receiver in that case and it was alleged in said petition that he was still acting as such receiver under and by virtue of the appointment of the St. Louis Court. The petition was filed September 17, 1920, and, although it prayed for the appointment of receiver, no appointment was made by the Butler County Circuit Court until July, 1921, when C. B.

Boll intervened and asked for such appointment. This was after the special appeal had been granted in the Buerck Case. In spite of the protest of Guitar, the appointment was made and the court refused to vacate such appointment. The subsequent appointment of receiver by the Butler County Circuit Court created an unseemly conflict of jurisdiction and was in excess of the jurisdiction of said court. Although the deed of trust authorized the appointment of a receiver, the court should not have made the appointment under the circumstances, either on the application of Boll or any of the parties in the case. After being made, such appointment should have been vacated and the court erred in refusing to do so.

Even though the Circuit Court of St. Louis ordered its receiver to enter his appearance in the Trust Company Case, as contended by respondent, it did not thereby surrender its jurisdiction. The property of the receivership estate was sought to be sold under the mortgage deed of trust, and it was the duty of the receiver to see to it that the rights of the estate were protected. Such conduct is entirely consistent with the assertion of jurisdiction by the St. Louis court.

It is unnecessary to notice other reasons urged for the reversal of the order refusing to vacate the appointment.

V. It results from the foregoing that in the Buerck Case the appeal of defendants should be dismissed, and in the Trust Company Case the order of the Butler County Circuit Court refusing to vacate the appointment of the receiver should be reversed and the cause remanded with directions to sustain said motion and set aside said order.

Conclusion.

It is so ordered. All concur.