CHARLES BUSSEN, (PLAINTIFF) APPELLANT, v. LOUISE H. DEL COMMUNE, (DEFENDANT) APPELLANT, HENRY J. DRURY, SHERIFF OF STE. GENEVIEVE COUNTY, MISSOURI, DEFENDANT.—199 S. W. (2d) 13.

St. Louis Court of Appeals. Opinion filed January 21, 1947.

Motion of plaintiff-appellant for a rehearing or to transfer cause to Supreme Court overruled February 21, 1947.

Application of plaintiff-appellant to Supreme Court for transfer of cause to that court denied April 21, 1947.

862

*Emmett Golden* and *Arthur G. Heyne* for Louise H. Del Commune, defendant-appellant.

*Fred J. Hoffmeister* and *Harry Gershenson* for plaintiff-appellant.

BENNICK, C.—This is a suit in equity which was brought for the alleged purpose of quieting title to a described tract of land in Ste. Genevieve County, and for the further purpose of determining the right to possession, and of restraining defendants from interfering with plaintiff's possession and enjoyment of the land by the execution of a judgment which had been previously rendered against plaintiff in an unlawful detainer suit.

The greater portion of the land in question is operated as a rock quarry. The plaintiff as Charles Bussen, who is the present owner of the land, and operates the quarry upon it. The principal defendant is Louise H. Del Commune, who claims a leasehold interest in and to a portion of the land. The other defendant is Henry J. Drury, the Sheriff of Ste. Genevieve County, whom plaintiff seeks to have enjoined from acting in his official capacity to execute the judgment rendered in the unlawful detainer suit.

The issues in the case can best be determined by a statement of the facts leading up to the present controversy.

Defendant Louise H. Del Commune is the widow of Charles L. Del Commune, who died on March 28, 1936.

The land in question was originally owned by Frank Burgert and Elizabeth Burgert, his wife.

On October 23, 1909, the Burgerts, as parties of the first part, leased the premises by a written lease to one Baumstark, as party of

the second part, for a term of twenty-five years, expiring October 22, 1934. By the terms of the lease Baumstark was given the sole and exclusive right of operating a quarry upon the land, and as consideration for the lease was obligated to pay the Burgerts certain monthly royalties upon the stone removed from the premises, or in any event a minimum annual rental of $25.

The present controversy involves, among other things, the interpretation to be given the following clause of the lease:

"The said parties of the first part agree for themselves, their heirs or assigns, to lease these premises to the said party of the second part, his heirs or assigns, at the expiration of this lease for a like number of years at the same rates and provisions as in this lease expressed."

The dispute is over the question of whether such clause should be construed as a covenant to renew, or, in effect, as a covenant to extend. Bussen argues that the clause was not intended as a present demise so as itself to extend the tenancy for the additional period upon the expiration of the original term, but that instead it contemplated the execution of a new lease, without which the tenant was not entitled to retain possession. Mrs. Del Commune insists, on the other hand, that even though the clause contemplated the execution of a new lease, the lessor was given no option in the matter, so that if the tenant claimed the privilege of holding over, the tenancy would be continued for the additional term, whether the lessor fulfilled his obligation or not.

Baumstark died shortly before the expiration of the original term of the lease; and on June 23, 1934, his executors, after a private sale of the leasehold interest, conveyed all of his right, title, and interest to Mr. and Mrs. Del Commune as tenants by the entirety, who thereupon entered into possession of the premises, and thenceforth paid the Burgerts the royalties and rentals provided for by the lease.

It was a conceded fact that upon the termination of the lease on October 22, 1934, there was no execution of a new lease between the Burgerts and the Del Communes, nor a formal extension of the existing lease. On the contrary, Bussen's evidence was to the effect that Del Commune, upon the expiration of the lease, tendered a new instrument on the same terms, which the Burgerts refused to sign unless provision was made for the payment of larger royalties. The evidence was to the further effect that an oral agreement was thereupon made that the Del Communes should remain in possession of the premises as month to month tenants until such time as business conditions might justify the execution of a lease for larger royalties, and that the Del Communes' possession of the property was thenceforth continued upon a purely monthly basis.

Mrs. Del Commune not only objected to the admission of such evidence for reasons which will be considered in the course of the opinion, but also took the position that when she and her husband held

over after the expiration of the original term with the Burgerts' consent, the law implied a continuation of the tenancy upon the same terms and conditions as contained in the original lease, and that in any event there was no consideration for an agreement as to a month to month tenancy because, in her view of the case, the Burgerts had been legally obligated to extend the lease for an additional term of twenty-five years.

Upon Del Commune's death in 1936, the entire leasehold interest vested in Mrs. Del Commune by right of survivorship; and on May 22, 1937, she sublet the premises to Bussen by a written lease for a term of five years expiring May 21, 1942, and subject to the right of renewal for a like term upon the giving of notice ninety days before the expiration of the original term. The lease provided for Bussen's payment to Mrs. Del Commune of certain royalties upon the stone removed from the quarry, or in any event a minimum annual rental of $85.

During the term of such lease, Bussen acquired the property from the Burgerts by warranty deeds executed, respectively, on September 5, 1940, and March 28, 1942. Following Bussen's purchase of the property, Mrs. Del Commune began paying him the royalties which she had theretofore paid the Burgerts, and continued such payments until some time in 1942, when Bussen refused to accept further checks. He in turn paid Mrs. Del Commune the royalties due under the lease from her until January, 1942, when he discontinued further payments upon learning, as he testified, that the original lease of 1909 had not been renewed upon its expiration in 1934.

About June, 1943, Mrs. Del Commune brought an unlawful detainer suit against Bussen, and recovered a judgment determining that Bussen's right of possession of the premises had expired on May 21, 1942, when he neglected to exercise his option to renew his lease from Mrs. Del Commune, and that the latter was entitled to the immediate possession of the premises. Bussen thereupon appealed to this court, where the judgment was affirmed on May 2, 1944. [Del Commune v. Bussen, (Mo. App.), 179 S. W. (2d) 744.] This court pointed out that the title acquired by Bussen in purchasing the property from the Burgerts was not that of Mrs. Del Commune whom he had theretofore recognized as his landlord, and that there was no proof that her interest had expired or been transferred.

In the case at bar, Mrs. Del Commune claimed by way of defense that the judgment rendered in such unlawful detainer suit was *res adjudicata* upon the issue of her right to the possession of the premises. Bussen asserted, on the other hand, that the exact nature, character, and extent of her claim or interest had never been fully and clearly established, and that because of the threat of execution of such judgment, he had brought the present suit in equity for the purpose of quieting title to the land and of determining that Mrs. Del Commune

had no right to the possession thereof, and for the further purpose of enjoining Mrs. Del Commune from enforcing the judgment which had been rendered in her favor in the unlawful detainer suit. In addition to her plea of *res adjudicata*, Mrs. Del Commune asked that the court decree that she had a valid and subsisting lease of the property. Upon the facts and issues thus presented, the trial court found that upon the expiration of the term of the original lease in 1934, an agreement was reached whereby the Del Communes retained possession of the premises as month to month tenants, and that whatever rights the Del Communes might have had to a renewal or extension of the original lease on the part of the Burgerts had been lost by their failure to insist upon specific performance. As for the contention that the act of the Del Communes in holding over with the Burgerts' consent implied a continuation of the tenancy upon the same terms and conditions as expressed in the original lease, the court held that any such presumption which might otherwise have arisen was rebutted and overcome by the evidence of the new agreement creating a tenancy from month to month.

As regards the effect to be attributed to the judgment theretofore rendered in Mrs. Del Commune's favor in the unlawful detainer suit, the court held that such judgment had adjudicated the question of Mrs. Del Commune's right to the possession of the premises under the 1937 lease to Bussen; and concluding that the temporary injunction which had been previously issued was an effort to restrain proceedings at law under such valid judgment, the court ordered that the injunction be dissolved.

Upon the question of quieting title to the property, the court decreed that the fee simple title to the property was vested in Bussen free and clear of any claim on the part of Mrs. Del Commune, except for her right of possession under the judgment which had been rendered in the unlawful detainer suit.

There was a general finding in favor of defendant Drury, the Sheriff of Ste. Genevieve County.

Following the entry of such decree, both Bussen and Mrs. Del Commune filed notices of appeal to the Supreme Court, which was thought to have appellate jurisdiction upon the ground that the case involved title to real estate within the meaning of Article V, Section 3, of the Constitution of 1945.

Upon the submission of the case, the Supreme Court inquired into the matter of its jurisdiction, and noted that while a suit to quiet title is ordinarily within its jurisdiction, the mere form of the action is not of itself determinative of whether title to real estate is in fact involved; that in the case at bar there was no actual controversy over Bussen's ownership of the property, which was in fact admitted on the record; that the right asserted by Mrs. Del Commune was wholly possessory; and that even though it was true that the decree

purported to quiet title in Bussen, that part of the decree, about which there had been no issue between the parties, could not be considered as adjudicating or determining title so as to vest appellate jurisdiction in the Supreme Court. In these circumstances, the Supreme Court held that the case did not involve title to real estate in the required constitutional sense, and consequently ordered that the cause be transferred here. [Bussen v. Del Commune, (Mo. Sup.), 195 S. W. (2d) 666.]

It is thus important to determine at the outset of the case what matters were actually in dispute between the parties, and what disputed matters the court adjudicated.

As the Supreme Court distinctly pointed out, the question of Bussen's title was never in dispute, but was in effect conceded on the record. Instead, the primary issue was the question of right of possession as between Bussen and Mrs. Del Commune, depending upon the character of the latter's status as a tenant, which Bussen had recognized her to be by his acceptance of rentals from her. Coupled with this was the question of whether Bussen was entitled to injunctive relief against the enforcement of the judgment which Mrs. Del Commune had theretofore obtained against him in the unlawful detainer suit.

As to the latter question, the court was undoubtedly correct in holding that the judgment in the unlawful detainer suit was *res adjudicata* upon the question of Mrs. Del Commune's present right of possession as against Bussen upon the expiration of the term of the 1937 lease from her to him. Having recognized Mrs. Del Commune as his landlord by virtue of his execution of the lease, and in the absence of any showing that he had acquired Mrs. Del Commune's interest (whatever it was) by his purchase of the property from the Burgerts, Bussen's right of possession terminated with the expiration of the lease, from and after which time Mrs. Del Commune was entitled to the immediate possession of the premises.

It is to be borne in mind, however, that all that was adjudicated by the unlawful detainer suit was Mrs. Del Commune's present right of possession in so far as concerned the respective rights and liabilities of herself and Bussen growing out of the relationship created by the 1937 lease. That suit was necessarily limited to such single issue, and did not in any sense purport to determine the exact nature and extent of Mrs. Del Commune's interest in the property. It is such question which is primarily in issue in this case, with Bussen asking the court to decree that Mrs. Del Commune has no interest or right of possession whatever, and with Mrs. Del Commune asking the court to decree that she has a valid and subsisting lease for a term of twenty-five years from and after the date of the expiration of the original lease executed by the Burgerts in 1909. It would appear, therefore, that as to such controversy, the parties, in effect, are both seeking a

declaratory judgment defining Mrs. Del Commune's interest in the property as it affects the question of the right of possession. In other words, this is not a suit for possession, but a suit to settle and afford relief from the uncertainty and insecurity which now exists with respect to the question of right of possession.

Mrs. Del Commune argues, as a matter of chief insistence, that in the consideration of such question, the court committed error in admitting the testimony of Mrs. Burgert as to what had transpired between the Burgerts and Mr. Del Commune relative to the status under which the Del Communes should retain possession of the premises after the expiration of the 1909 lease.

It was Mrs. Burgert, when called by Bussen as a rebuttal witness, who was permitted to testify that upon the expiration of the original lease, Mr. Del Commune tendered a new lease on the same terms, which she and her husband refused to sign unless provision was made for the payment of larger royalties; and that an agreement was thereupon made between her and her husband on the one hand, and Mrs. Del Commune on the other, that the Del Communes should thenceforth remain in possession of the premises as month to month tenants. Her testimony was objected to upon the ground that Mr. Del Commune was dead, which was clearly understood by both court and counsel to raise the question of whether she, as a surviving party to the contract or cause of action in issue and on trial, was competent to testify in favor of Bussen who claimed under her, when Mr. Del Commune, the other original party to such contract or cause of action, was dead and therefore powerless to contradict whatever testimony she might give. [Sec. 1887, R. S. Mo. 1939, Mo. R. S. A., Sec. 1887.]

Bussen states in his brief that the question of whether an agreement had been made to permit holding over under the 1909 lease was "the important factor in the case"; and since Mrs. Burgert was one of the original parties to such contract or transaction, it would seem, in view of Mr. Del Commune's death, that her incompetency to testify should logically follow.

Bussen argues, however, that notwithstanding the fact that Mr. Del Commune was dead, Mrs. Burgert was none the less a competent witness to what transpired with Mr. Del Commune for the reason that she was not a party of record to the case before the Court.

While the authorities have not always been in accord upon the question of whether, to be within the disqualification of the statute, the witness need be a party to the record, the better and prevailing rule is that whether the witness is a party to the record makes no difference as to his statutory incompetency, but that it is the fact of his having been a party to the contract or cause of action in issue and on trial, the other party to which is dead, that renders him incompetent to testify with reference thereto in his own favor or in favor of any party to the action claiming under him. The statute

makes no distinction based upon the status of the witness on the record. On the contrary, the rule which excludes the witness is as broad as the contract or cause of action in issue and on trial; and the witness is rendered incompetent where his interest in the result of the suit is adverse to that of the decedent, and has passed by his own act or deed to a party on the record who represents his interest in the controversy. As grantee in the deeds by which he had acquired title to the property, Bussen represented Mrs. Burgert's interest, and she was therefore incompetent to testify in his, favor in regard to the transaction with Mr. Del Commune, even though she herself was not a party to the suit. [Meier v. Thieman, 90 Mo. 433, 2 S. W. 435; Griffin v. Nicholas, 224 Mo. 275, 328, 123 S. W. 1063; Asbury v. Hicklin, 181 Mo. 658, 81 S. W. 390; Edmonds v. Scharff, 279 Mo. 78, 213 S. W. 823.]

Bussen suggests, however, that by subjecting Mrs. Burgert to cross-examination. Mrs. Del Commune in any event waived her incompetency as a witness.

After having unavailingly objected to Mrs. Burgert's competency, Mrs. Del Commune had the right to cross-examine her as to matters covered by her examination in chief without waiving the right to insist on her objection. [Johnston v. Johnston, 173 Mo. 91, 121, 73 S. W. 202.] In fact, it is only where the party insisting upon the incompetency of the witness nevertheless cross-examines him on new matters not touched upon or brought out on the examination in chief that the incompetency is waived, and then only as to such new matter. [McCune v. Goodwillie, 204 Mo. 306, 332, 102 S. W. 997.] In this case the only new matter of any material consequence upon which Mrs. Burgert was cross-examined (her transactions with Bussen) was matter as to which she was not incompetent; and the fact that she was also cross-examined about the transaction with Mr. Del Commune was not a waiver of Mrs. Del Commune's objection, which had been timely interposed and overruled.

Finally Bussen argues that apart from all other considerations, Mrs. Burgert was competent to testify for the reason that even though Mr. Del Commune was dead, his coparty, Mrs. Del Commune, was alive and available to testify.

It is of course generally true that where the transaction in issue and on trial was had on the one side by two persons, the death of one of them does not disqualify the opposite party as a witness, since in such a case the reason for the rule will not ordinarily exist. The basis of the statutory prohibition is the prevention of one person testifying where death has sealed the lips of his adversary; and in a case where there is a person still alive who, having been a cocontractor with the decedent, is cognizant of all the facts and as able as the decedent would have been to testify in opposition to the testimony of the witness objected to as incompetent, the need for the exclusion of the testimony

of the opposite party is obviously not present. Fulkerson v. Thornton, 68 Mo. 468.

However, if it appears that the contract or transaction on which the suit is founded was effected, on the one side, solely by or through the decedent, the opposite party will be none the less disqualified as a witness, since in that event the surviving cocontractor would not be personally cognizant of the facts and in a position to rebut the testimony of his adversary. [Williams v. Perkins, 83 Mo. 379; Butts v. Phelps, 79 Mo. 302.]

The latter is precisely the situation in the case at bar. All of the transactions relative to holding over under the 1909 lease were conducted with Mr. Del Commune alone, as indeed appears from Mrs. Burgert's own testimony. The death of Mr. Del Commune therefore rendered her incompetent to testify to such transactions, notwithstanding the fact that Mrs. Del Commune is a surviving coparty to whatever agreement may have been reached.

It is clear that Mrs. Burgert was incompetent to testify as to the arrangements made with Mr. Del Commune in regard to the terms and conditions upon which he and Mrs. Del Commune were to retain possession of the premises after the expiration of the 1909 lease; and her testimony should not have been considered by the court in reaching its decision upon such issue in the case.

For her next point Mrs. Del Commune contends that the court committed error in admitting the testimony of Mr. William C. Boverie, a venerable member of the bar, who had practiced his profession in Ste. Genevieve for many years. What she is actually complaining of is the admission in evidence of a note Mr. Boverie identified, which had been addressed to him by her late husband on October 19, 1934, in regard to the Burgerts' refusal to renew the 1909 lease which was about to expire. Her position, in short, is that the note indicates on its face that it was addressed to Mr. Boverie in his professional capacity, and that it consequently constituted a privileged communication between attorney and client, which he, as the attorney, should not have been permitted to divulge over her objection as a party jointly interested with her husband in the matter to which the communication related.

The note in question read as follows:

"Dear Will

"Moreau and I went out to Burgerts to have the papers signed. Mrs. Burgert refused to sign same wanted more royalty. I told them that you said this was a formality and that they could think it over— That if I saw fit to increase the amount of royalty I would do it later— Leaving this deed for you. They refuse in Moreau presence—Was very nice said they did not want any falling out with me. Said that

Baumstark didn't treat them right. Told them I could not answer for that.

"Yours

"CHARLES L. DEL COMMUNE"

The importance of the note is that if competent in evidence, it tends to disclose, among other things, that the parties themselves, in their interpretation of the provision of the 1909 lease regarding its extension upon the expiration of the original term, had construed it as contemplating the execution of a new lease for which Del Commune was negotiating with the Burgerts as stated in the note.

Our statute, which is declaratory of the common law rule, provides that an attorney shall be incompetent to testify concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client. [Sec. 1895, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, sec. 1895.]

It is thus to be observed that for the rule of privilege to apply, the relation of attorney and client must have actually existed between the parties at the time the communication was made or the advice given. [State ex rel. v. Wood, 316 Mo. 1032, 292 S. W. 1033.] Moreover, such relation must have existed as to the subject matter of the communication or advice (C. Aultman & Co. v. Daggs, 50 Mo. App. 280); and the communication, if it is to be privileged, must have been made to the attorney in his professional capacity, and on account of the relation of attorney and client. State ex rel. v. Woods, *supra*. If such relation existed, the privilege is not confined to communications or advice in connection with pending or anticipated litigation, but it extends to all matters where the attorney was consulted by his client for professional advice or service in the course of the employment. [Johnson v. Sullivan, 23 Mo. 474.]

The question of whether the note was a privileged communication was one of law for the court (Hull v. Lyon, 27 Mo. 570); and to enable it to rule upon the question, the court proceeded to examine Mr. Boverie in regard to his relations with Del Commune, and the circumstances under which the note had come into his possession.

Mr. Boverie's recollection of all the details of the matter was admittedly very poor. He stated that he and Del Commune had been lifelong friends, and on different occasions had had business dealings together, but he did not recall whether any of such dealings had related to the quarry. Moreau, who was referred to in the note, and has since died, was scrivener and insurance man who had maintained his own personal office in the same suite with Mr. Boverie. Del Commune's activities had been carried on mostly with Moreau. Upon opening his office one morning, Mr. Boverie either found the note upon his desk, or else it was handed to him by Moreau. He regarded it merely as a "friendly note", and not as a "confidential thing."

He nevertheless put the note in his file, and later, when some business came in from Bussen, he turned the entire file over to Bussen, who subsequently found the note among the contents.

Under the circumstances of the case, we are of the view that the court committed no error in holding that the note was not to be excluded upon the ground that it was a confidential communication between attorney and client. All that Mrs. Del Commune has to stand upon in support of her objection is the fact that the note evidences upon its face that Mr. Boverie had previously expressed an opinion regarding the renewal of the lease. This advice may have been given to Del Commune, or it may have been given to Moreau. But granting that it was Del Commune who had the prior consultation with Mr. Boverie, it does not necessarily follow that there was any relationship of attorney and client between them. Mr. Boverie's suggestion was apparently made as much for the benefit of the Burgerts as for the benefit of Del Commune. The burden was upon Mrs. Del Commune to show that the note had been communicated under such circumstances that it fell within the rule of privilege. Mr. Boverie himself had not regarded it as confidential, nor had he treated it as such. On the contrary, he stated that he never was actually Del Commune's lawyer. The result depended to a great extent upon the credibility of Mr. Boverie's testimony; and with the court having found that the note had not been communicated on account of the relationship of attorney and client, due deference would dictate that we reach the same conclusion here.

In an equity case the appellate court tries the case *de novo*, excluding from its consideration any evidence erroneously admitted by the trial court, and reaching its own conclusion as to what the decision shall be upon such evidence as was properly admissible. [Bryant v. Shinnabarger, 285 Mo. 484, 227 S. W. 54; Lowe v. Montgomery, 321 Mo. 330, 11 S. W. (2d) 41; Snow v. Funck (Mo.), 41 S. W. (2d) 2; Nordquist v. Nordquist, 321 Mo. 1244, 14 S. W. (2d) 583.]

The elimination of Mrs. Burgert's testimony respecting the transaction with Del Commune makes a vast difference in the result in the case.

We have already noted that Bussen and Mrs. Del Commune are in disagreement over the consequence of the Burgert's refusal to execute a new lease upon the expiration of the term of the 1909 lease. Bussen argues that the fact that the Del Communes requested a new lease, and that the Burgerts refused to execute the same, refutes the idea that the Del Communes held over for an additional term of twenty-five years, while Mrs. Del Commune insists that the Burgerts were legally bound to execute a new lease, and that equity, regarding that as done which ought to have been done, will regard the resulting situation as if the renewal had actually been made. Furthermore, she argues that Bussen, as successor in interest to the Burgerts, cannot

set up the Burgerts' wrongful act in order to defeat her rights under the very provision of the lease with which the Burgerts refused to comply.

We cannot escape the conclusion that Mrs. Del Commune is right in her contention.

There is of course a technical distinction between a provision in a lease for a renewal and a provision for an extension of the term at the option of the lessee, the former being regarded as merely a demise for the original term with a privilege for a new lease for an extended term, and the latter as a present demise for the full term to which the lease may be extended upon the exercise of the lessee's option. If the provision is for a renewal, the privilege granted is for the creation of a new tenancy by the execution of a new lease upon the expiration of the original term, while if the provision is for an extension, no new tenancy is created, but instead the provision of itself and alone continues the tenancy for the additional term upon the exercise of the option conferred. Suffice it to say that the courts of this state are inclined to disregard the distinction between a renewal and an extension unless the execution of a new lease is specifically required, in which event the distinction is recognized, at least if the terms and conditions of the new tenancy are to differ materially from those of the old. [The Insurance & Law Building Co. v. The National Bank of Missouri, 71 Mo. 58; American Press v. City of St. Louis, 314 Mo. 288, 284 S. W. 482; Medicus v. Altman, 199 Mo. App. 466, 203 S. W. 637; Blanchon v. Kellerstrass Distilling Corp., 200 Mo. App. 610, 208 S. W. 484; Stout v. North, 211 Mo. App. 245, 242 S. W. 119.]

In view of the language of the 1909 lease by which the Burgerts agreed "to lease" the premises to the lessee at the expiration of the term for a like number of years and at the same rates and provisions as expressed in the original lease, it would appear that the covenant was technically one for a renewal as distinguished from an extension. The agreement "to lease" evidently contemplated the execution of a new lease; and there is no doubt that the parties themselves so construed it, as evidenced by Del Commune's tender of a new lease for the Burgerts to sign.

But even though the Burgerts refused to execute the lease, we cannot believe that their refusal affected the Del Communes' right to retain possession of the premises for the additional term of twenty-five years. The renewal provision was primarily for the benefit of the Del Communes, and it was for them to say whether they would avail themselves of the privilege accorded them. If so, the Burgerts had no option but to execute the lease, which, under such circumstances, was a mere "formality", as Mr. Boverie had indicated. The only condition was that the Del Communes' option should be exercised before the expiration of the original lease, since otherwise their right

would terminate when there was no longer a contract under and by virtue of which they were entitled to claim the privilege. [Rutledge & Taylor Coal Co. v. Mermod, Jaccard & King Jewelry Co., 209 Mo. App. 292, 237 S. W. 849.] This they did, as shown by Del Commune's note to Mr. Boverie, at least three days before the lease expired.

As was aptly said in Medicus v. Altman, *supra*: "We feel it to be clear that where the 'renewal' of the lease is to be on the same terms as the original, it would be a useless thing to execute a new paper; and therefore the tenant, on exercising his option, will hold under the original lease, as upon an extension for the extended period provided for in that lease."

By his tender of a new lease before the expiration of the original term, Del Commune affirmatively claimed the privilege which had been granted the lessee under the provision of the original lease. To be sure the Del Communes might have maintained a suit for specific performance upon the Burgerts' refusal to execute a lease, but no such course was in all events essential. Having done all that was required of them in order to renew the lease, their right to retain possession of the premises was complete; and in this suit for a declaration of the rights and status of the respective parties, the court can as well determine their rights as in a suit for specific performance. We conclude, therefore, that upon the Del Communes' timely exercise of their right to a renewal of the lease, a new tenancy was created for the additional term, irrespective of the Burgerts' wrongful refusal to comply with the formality of the execution of a new lease upon the identical terms and conditions as expressed in the original instrument. [Medicus v. Altman, *supra*.]

The exclusion of Mrs. Burgert's testimony undoubtedly works a hardship on Bussen in that it takes away the chief support for the lower court's finding that the Del Communes abandoned their right to a renewal of the lease and agreed to remain on the premises as month to month tenants. However the fact that the exclusion of evidence will work a hardship on a party is no ground for its admission if it is shown to be incompetent. But so far as the question of hardship is concerned, it is to be borne in mind that the whole controversy is brought about, not by any wrong of the Del Communes, but by the wrongful act of the Burgerts in refusing to comply with the plain obligation they had theretofore assumed. Bussen is their successor in interest, and is therefore in a poor position to ask equitable relief growing out of the Burgerts' wrongful refusal to do something they had bound themselves to do, and as to which they had no alternative.

What we have said disposes of Bussen's contention that the decree should be modified to the extent of giving him the right of possession of the premises without the necessity for instituting a further proceeding.

To recapitulate, there is no objection to the court's finding in so far as it determined that the fee simple title to the property is vested in Bussen free from any claim or interest on Mrs. Del Commune's part which affects his title as distinguished from his right of possession. As we have pointed out, his title was in effect admitted on the record. The court was also right in dissolving the temporary injunction against Mrs. Del Commune's enforcement of the judgment which she had previously obtained in the unlawful detainer suit. Where the court was wrong, however, was in adjudging that Mrs. Del Commune's status, in so far as it fixes her right of possession, is that of a tenant from month to month. On the contrary, she holds according to the terms of the renewal provision of the 1909 lease, and has the right of possession of the premises for an additional term of twenty-five years from October 22, 1934, the date of the expiration of the original term.

It follows that the decree should be reversed and the cause remanded with directions to the lower court to enter up a new decree in accordance with the views herein expressed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, reversed and the cause remanded with directions as recommended by the Commissioner. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.