Thomas W. HUTCHINSON and Leslie
Barnhart, (Plaintiffs) Respondents,

v.

Alvin Martin STEINKE, (Defendant)
Appellant.

Nos. 30642, 30643.

St. Louis Court of Appeals,

Missouri.

Jan. 16, 1962.

Heneghan, Roberts & Cole, John J. Cole, and Woodward Lee Carter, Jr., St. Louis, for appellant.

Barnhart & Sommers, Don B. Sommers, David G. Dempsey, McLeod & Bransford, and Arthur E. McLeod, St. Louis, for respondents.

DOERNER, Commissioner.

These appeals involve two actions for damages for personal injuries, which by agreement between the plaintiffs, Hutchinson and Barnhart, and the defendant, Steinke, were consolidated for trial. Trial before the court and a jury resulted in verdicts and judgments in favor of the plaintiffs, for $6,300 for Hutchinson and $4,200 for Barnhart, and defendant has appealed.

The automobile collisions which gave rise to this litigation occurred in St. Charles County on U. S. Highway 40, approximately three-tenths of a mile west of its junction with Missouri Highway K, on September 13, 1958, about 9:00 P.M. In that area U. S. Highway 40 is a two-lane highway, and because of the rolling nature of the terrain there are a number of crests and dips in the road. From the evidence it appears that in disregard of yellow lines marking a no-passing zone, one Amos Herron, driving a 1946 Plymouth in a westwardly direction, attempted to pass a tractor-trailer being driven in the same direction by Henry Robotnid, as the two vehicles were ascending a hill. Leon Terrill, operating a 1956 Chevrolet eastwardly, came over the crest of the hill, collided with Herron's car, and after rolling over more than once came to rest in an upright position, blocking at least two-thirds of the eastbound lane. Shortly thereafter (the intervening period of time being a matter of sharp dispute), defendant Steinke, driving a GMC stake truck in an eastwardly direction, accompanied by plaintiffs as passengers, came over the top of the hill and collided with Terrill's car.

Defendant's initial assignment of error involves a claim of fraudulent joinder and improper venue. Plaintiffs Hutchinson and Barnhart, in their separate actions filed in the Circuit Court of the City of St. Louis, named as defendants Herron, Steinke, Terrill and Robotnid. Hutchinson and Herron were residents of the City of St. Louis; Barnhart and Steinke were residents of St. Louis County; and Terrill and Robotnid were nonresidents of Missouri. Since defendant Herron was a resident of the City of St. Louis, venue in that jurisdiction was presumably proper under Sec. 508.010(3) RSMo 1959, V.A.M.S., which provides: "When there are several defendants, some residents and others nonresidents of the state, suit may be brought in any county in this state in which any defendant resides."

It appears from the record and the briefs that on the morning of the day the trial commenced, while both cases were still pending in Division No. 1 awaiting assignment to a trial division, each plaintiff dismissed his action as to defendants Herron, Terrill and Robotnid, without prejudice, leaving Steinke, as the sole defendant in

both cases. Thereafter, a memorandum was filed in Division No. 1, signed by counsel for plaintiffs and defendant Steinke, consolidating the two suits for trial by agreement. The consolidated action was thereupon assigned to Division No. 7 for trial. When the action reached the trial division counsel for defendant Steinke, in chambers, then asked the court to continue the cases so that he might subpoena Herron and Terrill, which request was denied. At this point the noon recess was declared. Upon the resumption of the proceedings, again in chambers, counsel for defendant Steinke orally moved to quash the return of service as to Steinke, and asked leave to follow it with a written motion. The motion to quash was likewise overruled. Subsequently, a written motion was filed, plaintiffs were granted leave to change their dismissals of Herron, Terrill and Robotnid to dismissals with prejudice, and defendant Steinke refiled his written motion.

■ It is defendant's contention on appeal that Herron was originally joined as a defendant for the sole purpose and with the fraudulent intent of establishing venue in the City of St. Louis, and that from the very inception of the actions plaintiffs never at any time intended to press their cases against him. No evidence was introduced in support of defendant's motion, and hence there is no proof of fraudulent intent unless it can be found from the facts in the record and the inferences to be drawn therefrom. Defendant states that such proof is supplied by the fact that "* * * Herron was known by all parties to be an uninsured motorist * * *," and because plaintiffs could have obtained a judgment against Herron at any time since Herron never appeared and was in default. The weakness in defendant's argument is that there is no probative evidence in the record that Herron was an uninsured motorist. Nor is there any proof that at the time plaintiffs filed their actions plaintiffs were then aware of that fact, if it was a fact. If Herron was indeed financially irresponsible, as defendant states, it is entirely conceivable that plaintiffs did not acquire knowledge thereof until some time after they had instituted their suits, which may have led to their dismissal as to him. Defendant should have supported his motion by proof, and in the absence of such proof we cannot speculate as to what such evidence might be. For the rule is that where the petition states a cause of action upon which relief can be granted against the resident defendant, as defendant concedes was the case at bar, the claim of fraudulent joinder by a nonresident defendant must not only be raised by a motion, but must be supported by adequate proof. State ex rel. Thompson v. Terte, 357 Mo. 229, 207 S.W.2d 487.

■ Furthermore, Section 508.010 RSMo 1959, V.A.M.S., fixing venue in the county of the defendant's domicile, confers a mere personal privilege which may be waived by the person entitled to assert it. Robinson v. Field, 342 Mo. 778, 117 S.W.2d 308; Jones v. Church, Mo.App., 252 S.W.2d 647. Such waiver may take the form of an act that would constitute a general appearance, as by pleading to the merits, Robinson v. Field, supra; Buerck v. Mid-Nation Iron Products Co., 295 Mo. 263, 245 S.W. 45; Worley v. Worley, Mo.App., 176 S.W.2d 74; by filing an application for a change of venue, Cook v. Globe Printing Co. of St. Louis, 227 Mo. 471, 127 S.W. 332; Lieffring v. Birth, Mo.App., 154 S.W.2d 597; by agreeing to a resetting of the cause, and to a continuance, Baisley v. Baisley, 113 Mo. 544, 21 S.W. 29, 35 Am. St.Rep. 726; Columbia Brewery Co. v. Forgey, 140 Mo.App. 605, 120 S.W. 625; by obtaining additional time to answer, Harrison v. Murphy, 106 Mo.App. 465, 80 S.W. 724; and by requesting and obtaining a continuance, Gray v. Grand River Coal & Coke Co., 175 Mo.App. 421, 162 S.W. 277. The record in the instant case shows that after plaintiffs had dismissed as to Herron the defendant executed and filed an agreement that the two actions should be consolidated for trial, accepted an assignment to the trial division, and requested a con-

tinuance of the trial of the consolidated action before raising any question as to the jurisdiction of the court over his person. Assuming that defendant was not in a position to effectively raise the issue of improper venue until plaintiff dismissed as to Herron, it is clear from the foregoing authorities that by such actions the defendant thereafter waived any right he might have had to object to the venue.

■ During the trial Terrill was called to the stand by plaintiff and testified on his behalf. On cross-examination defendant sought to impeach Terrill by using a written statement which Terrill had given to one W. A. Bowman, Jr., manager of the Valley Adjustment Company of Portsmouth, Ohio, on September 18, 1958, five days after the collisions occurred. Terrill, by his personal attorney, William H. Bruce, Jr., objected to defendant's use of the statement on the grounds that it was a privileged communication. Thereupon, in chambers, the court heard evidence on the objection raised. At the conclusion of the hearing the court ruled that the statement was a privileged communication, and that defendant could not use it to cross-examine Terrill. Defendant assigns that ruling as error. The material facts regarding the occurrence as given by Terrill in his written statement were in sharp conflict with those to which he testified at the trial. For example, in his statement Terrill stated that as soon as his car came to rest back on the road, after colliding with Herron's car, he saw the headlights of Steinke's truck and that they " * * * looked like about 2 feet away, * * *" while on the witness stand he testified that about a minute elapsed between the time his car came to rest and the impact of the Steinke truck, and that he saw the Steinke truck come over the crest and down the hill, a distance he estimated at 400 feet. Hence if the trial court's ruling was erroneous there can be no doubt that it was prejudicial, for the effect of it was to prevent defendant from cross examining Terrill about such discrepancies.

During the hearing in chambers it developed that the witness Terrill was insured with the Inter-Insurance Exchange of the Automobile Club of Southern California for both liability and collision insurance and that the defendant Steinke was insured with the Automobile Club of Missouri for liability and property damage. It was further developed that Bowman interviewed Terrill and obtained his written statement at the telephoned and written request of Harry F. Collum, Claims Adjuster of the Inter-Insurance Exchange of the Automobile Club of Missouri, made on September 17, 1958. Reduced to its essentials, the basis of Terrill's objection to defendant's use of his written statement was that the Missouri Automobile Club was affiliated with the Southern California Automobile Club; that in obtaining his statement, through Bowman, the Missouri Automobile Club was doing so on behalf of the Southern California Automobile Club; and that the statement was one from an insured to his insurer, and therefore a privileged communication. Defendant does not dispute the legal proposition asserted by plaintiff, that a statement given by an insured to his insurer is a privileged communication. What defendant contends is that the evidence showed that the statement was obtained by the Missouri Automobile Club for its own use and purposes, not on behalf of Terrill's insurer, the Southern California Club. Thus the issue we are called upon to decide is whether there was sufficient probative evidence to sustain the court's ruling, and for the purpose of this opinion we will assume, without deciding, that a statement given by an insured to his liability insurer, concerning an event which may be the basis of a claim against him covered by his policy, is a privileged communication under an extension of that doctrine as applied to the relationship of attorney and client. On that subject see 22 A.L.R.2d 659; 58 Amer.Jur., Witnesses, Sec. 503, p. 282; 97 C.J.S. Witnesses § 276(d), p. 789; Wojciechowski v. Baron, 274 Wis. 364, 80 N.W.2d 434; In re Klemann, 132 Ohio St.

187, 5 N.E.2d 492, 108 A.L.R. 505; Heffron v. Los Angeles Transit Lines, 170 Cal.App. 2d 709, 339 P.2d 567, 74 A.L.R.2d 526; and for the somewhat more restricted English rule consult Westminister Airways v. Kuwait Oil Co., 1 K.B. 134.

The evidence offered by Terrill in support of his objection consisted of his own testimony and certain correspondence between his counsel and the Southern California Automobile Club. On direct examination Terrill testified:

"Q Will you tell the Court under what circumstances you gave that statement?

"A I believe this man from Ohio wanted a statement for my insurance company because they was so far away they couldn't get it theirself.

"Q And who did he tell you he was representing?

"A My insurance company."

However, on cross-examination Terrill stated:

"Q That is all I wanted to know. Now, did this man say he was representing the Automobile Club of Missouri?

"A He said he was retained by them.

"Q You knew that when the statement was given?

"A I did.

"Q All right. Of course you knew the Automobile Club of Missouri was not the Automobile Club, Triple A of Southern California?

"A They are associate or affiliated of that, they told me that. I first had the wreck and got out of the hospital and went over to Triple A's office here in St. Louis; I believe that was my first stop from the hospital."

In another phase of the case the evidence introduced before the jury showed that defendant Steinke had employed counsel, and through him had instituted an action in the St. Louis Circuit Court on September 20, 1958, against Terrill and Herron. At the hearing in chambers Terrill introduced in evidence a copy of a letter from the Southern California Club to Frank X. Cleary, a St. Louis lawyer, dated October 23, 1958, in which that Club advised Cleary that Terrill had been served in Ohio and requested Cleary to represent Terrill. In the letter the Southern California Automobile Club stated: "This case was originally investigated by the Automobile Club Inter-Insurance Exchange of St. Louis and although they carry the liability insurance on the Steinke vehicle we have permitted them to conduct an investigation of the facts and handle the claims on our behalf inasmuch as preliminary investigation and the police report indicated no liability on either their insured, Steinke, or our insured, Terrill. Now that Mr. Steinke and the passengers in his car have instituted suit against our insured and the co-defendant, Amos Herron, we consider it wise to request the Missouri Motor Club to transfer the claim file they are handling for us to an independent adjusting firm in St. Louis and by separate letter to the Missouri Motor Club we will request they do this. * * *" Meanwhile, on October 15, 1958, Terrill had employed Bruce, his own attorney, who wrote to the Southern California Automobile Club on October 22, 1958, requesting that the Missouri Automobile Club not be furnished any information which might be used by it to defeat Terrill's claim against Steinke and Herron. In its reply, dated October 30, 1958, the Southern California Automobile Club informed Bruce: "When this accident was originally reported to us by the Automobile Club Inter-Insurance Exchange of St. Louis we permitted them to conduct the investigation because of the rather obvious absence of liability on our insured, Mr. Terrill. However, as soon as we received notification of service of a lawsuit against our insured we instruct-

ed the St. Louis Automobile Club to discontinue any further investigation for us and transfer their claim file to our adjusting representatives in St. Louis, Elmer V. A. Bayer & Associates, Rialto Building, 4th & Olive Streets, St. Louis, Missouri. * * *"

In the hearing on Terrill's objection defendant Steinke introduced in evidence Collum's letter to Bowman. Omitting the name and address of the addressee it read:

"Re: Our Claim No. 8090396
Accident: 9–13–58
U. S. Highway 40 near
Missouri 94

"Dear Mr. Bowman:

"This letter will serve to confirm our telephone conversation of this morning.

"We insure Mr. Alvin M. Steinke, residing in the St. Louis area, on his 1955 GMC stake truck for $25/50,000 liability and $5,000 property damage. We would appreciate your handling our interest in your locality by making contact with the adverse party.

"The claimants in question are: Mr. Leon Terrell of Strathmore, California, and his passenger, Clarence Ratliff of Phenix City, Alabama. They are both visiting Mr. Dennis Scrivner in Waverly, Ohio (phone No. 404).

"Mr. Leon Terrell's 1956 Chevrolet 4 door is insured with the Interinsurance Exchange of the Automobile Club of Sourthern (sic) California, for both liability and collision.

"We are handling Mr. Terrell's collision loss here in St. Louis because we are affiliated with the Automobile Club of Southern California and handle their losses in our locality on a reciprocal basis. However, it is my understanding that they are referring the liability feature of their file to an indepdndent (sic) adjustment firm in Ohio to make contact with their assured while he is there.

"The details of the accident are as follows:

"Accident occurred 9–13–58 about 9:00 p. m. CDT on a 2-lane concrete high-

way. A westbound tractor-trailer unit was being passed illegally by a westbound passenger car (owner-driver Amos Herron of 2722 Stoddard St., St. Louis Missouri—uninsured colored man), which was in the left-hand or eastbound lane when Leon Terrell, driving eastward, was forced over onto the south shoulder of the road in trying to avoid a head-on collision. Terrell and Herron collided, Terrell overtuning. (sic) Our assured Steinke, also eastbound, struck either or both of the two cars and lost its right front wheel. The truck veered across the highway and ended up in a wooded field some distance off the northside of the highway.

"As I mentioned in our telephone conversation, there is a point of difference as to whether Steinke's truck struck Terrell's automobile or only Herron's 1946 Plymouth coupe.

"As I also mentioned in our telephone conversation, we had taken a brief report from Mr. Terrell to relay to the Southern California Club before we were aware that one of our assureds had been involved in the accident.

"We would appreciate your obtaining statements from the two parties in Waverly, Ohio, if at all possible, and relaying your findings to us.

"Your cooperation in this matter will be appreciated.

"Very truly yours,
"HARRY F. COLLUM
"HFC/ts
"P. S. Weather was clear and dry at time of accident.
H.F.C."

Defendant also introduced Bowman's reply, dated September 22, 1958, reading as follows:

"Dear Mr. Collum:

"We acknowledge receipt of your phone call and your letter on the above captioned case, and wish to report as follows:

"Upon receipt of your phone call we immediately attempted to contact the claim-

ants, however, they had not arrived as yet from St. Louis.

"Mr. Terrell then called me on Friday, September 18, 1958, and I proceeded to Waverly, Ohio, where I contacted both Mr. Terrell and Mr. Clarence Ratliff.

"*CLAIMANT # 1—Leon Terrell*—Mr. Terrell gave a complete statement to the effect that there was a taxi cab as a witness directly behind the stake truck which he states struck him after a first impact with an older make unit.

"He cannot honestly say there was an impact, but when his car came back up on the road after first rolling over one or two times he saw two headlights directly to his left, about two feet away, and assumed that he was struck again because his car was again rolled one or two times and he was thrown out at this point.

"He states he has severe injuries of his left arm, the lower arm bone being fractured, has contusions and abrasions over his entire body.

"*CLAIMANT # 2—Clarence W. Ratliff*—Mr. Ratliff is thirty-three years of age, married, his home address being Phenix City, Alabama. He states that he was not thrown from the car at any time, however, received a laceration on his scalp requiring sixteen stitches and is unable to work at this time.

"Both the claimants are employed by the same construction company, the Universal Pipe Line, who are in the process of placing a sprinkler system at the atomic energy plant near Piketon, Ohio.

"From our investigation it would appear that the taxi cab driver, Mr. Robert Murphy, would be the key witness on this second impact, however, the second claimant, Mr. Ratliff, definitely states that he felt the second impact and he was not injured until this impact, his head striking the center post on the driver's side of the unit as it rolled over, causing the cut. He states that the cut had not occurred on the first roll over.

"Mr. Leon Terrell states that he carries medical payment insurance on his own car and at this time is getting the bills together covering his hospital, doctor, etc. to furnish this office for transmittal as requested to your office.

"We are, therefore, enclosing these statements for your file and will hold ours open pending further information as requested, or until such time as you request that we retire this file accordingly.

> "Yours very truly,
> "Valley Adjustment Company
> "W. A. Bowman
"WAB/d"

Although plaintiff's trial counsel had earlier stated that he did not care how the court ruled on Terrill's objection, his role in the hearing was not entirely a passive one. After both Terrill and defendant had introduced their exhibits plaintiff's counsel asked and was granted permission to recall Cleary, who had previously appeared as a witness for plaintiff on another aspect of the case, and had testified that the law firm of which he was a member had been retained by the Inter-Insurance Exchange of the Automobile Club of Southern California to defend Terrill. In the hearing in chambers Cleary testified that the investigation file sent him by that company contained the original of Terrill's written statement.

Assuming, for the reason stated, that under the doctrine of privileged communication a statement by an insured to his liability insurer is to be equated with a statement given by a client to his attorney, it follows that the same precepts which govern the applicability of that doctrine to the latter relationship are relevant. As stated by this court in Bussen v. Del Commune, 239 Mo.App. 859, 199 S.W.2d 13, 20: "It is thus to be observed that for the rule of privilege to apply, the relation of attorney and client must have actually existed between the parties at the time the communication was made or the advice given. State ex rel. Chicago, R. I. & P. R. Co. v. Wood, 316 Mo. 1032, 292

S.W. 1033. Moreover, such relation must have existed as to the subject matter of the communication or advice (C. Aultman & Co. v. Daggs, 50 Mo.App. 280) * *." It was not only proper but necessary for Terrill to raise the question of privilege as soon as defendant began to cross-examine him about the statement, else he might have waived his right to raise it. Pinson v. Campbell, 124 Mo.App. 260, 101 S.W. 621. The question of whether Terrill's statement was a privileged communication then became one of law for the court, Hull v. Lyon, 27 Mo. 570, and the action of the trial court in permitting Terrill and the defendant to submit evidence on the matter, outside of the hearing of the jury, in order to enable him to rule on the question was eminently proper. Bussen v. Del Commune, supra. In the trial court, as the party claiming the privilege, Terrill had the burden of showing that the statement was privileged. Allen v. Allen, Mo.App., 60 S.W.2d 709; Bowles v. Kansas City, 51 Mo.App. 416. In this court, however, defendant as appellant has the burden of establishing that there was not sufficient probative evidence to support the court's ruling, and that it therefore abused its discretion. In that connection it may not be amiss to point out that since most of the evidence submitted by Terrill and the defendant consisted of correspondence the result did not depend, as it did in Bussen v. Del Commune, supra, upon the credibility of a witness, and the rule of deference, therefore, has little, if any, application.

In arguing below in support of the claim of privilege, counsel for Terrill laid great stress on Collum's letter to Bowman. He contended that it substantiated Terrill's claim that the Missouri Automobile Club was representing the Southern California Automobile Club in all matters connected with Terrill's casualty, and that it was so acting when it requested Bowman to obtain the statement from Terrill. With this contention we cannot agree. When the letter is read and considered as a whole we think it is obvious that "* * at the time the communication was made * * *," Bussen v. Del Commune, supra, the Missouri Automobile Club was not acting in a fiduciary, confidential or similar representative capacity on behalf of Terrill. The accident involved in this action occurred on September 13, 1958. Terrill testified that as soon as he got out of the hospital he "went over to Triple A's office here in St. Louis." He did not give the date, but in his statement he said that he got out of the hospital on "Monday, September 15, 1958." This accords with the statement in Collum's letter that "* * * we had taken a brief report from Mr. Terrell to relay to the Southern California Club before we were aware that one of our assureds had been involved in the accident." and with Collum's previous testimony, on another phase of the case, that he interviewed defendant Steinke on September 17, which was the same day Collum telephoned and wrote his letter to Bowman.

Furthermore, the contents of the letter make it apparent that Collum was requesting Bowman to interview Terrill on behalf of the Missouri Automobile Club. After informing Bowman that "We (the Missouri Automobile Club) insure * * * Steinke * * * for liability and * * * property damage" Collum asked Bowman to handle "* * * our interest in your locality by making contact with the adverse party." The "adverse party", then referred to as "The claimants in question * * *," were named as Terrill and Ratliff. The details of the accident were given, and the particular reason for obtaining the statements from Terrill and Ratliff was then stated: "As I mentioned in our telephone conversation, there is a point of difference as to whether Steinke's truck struck Terrell's automobile or only Herron's 1946 Plymouth coupe." As the insurer of Steinke, it was patently important to the Missouri Automobile Club to obtain statements from Terrill and Ratliff as to that issue. That Bowman understood

that he was to interview Terrill and Ratliff on behalf of the Missouri Automobile Club as Steinke's insurer is shown by his reply. In it he referred to Terrill as "Claimant #1" and to Ratliff as "Claimant #2."

The contention that the Missouri Automobile Club was then representing the Southern California Automobile Club in all matters growing out of the occurrence is effectively refuted by Collum's statement in the letter that "* * * * it is my understanding that they (the Southern California Automobile Club) are referring the liability feature of their file to an indepdndent (sic) adjustment firm in Ohio to make contact with their assured while he is there." This plainly indicates that as of the date of his letter, September 17, 1958, Collum believed that the Southern California Automobile Club, as the insurer under Terrill's liability insurance, would have other, independent investigators interview Terrill in Ohio regarding that feature of Terrill's insurance. Lastly, the very passage of Collum's letter stressed by Terrill's counsel affirmatively shows the limited capacity in which the Missouri Automobile Club was then acting on behalf of Terrill. Collum stated that "We are handling Mr. Terrell's collision loss here in St. Louis because we are affiliated with the Automobile Club of Southern California and handle their losses in our locality on a reciprocal basis." "'Collision insurance' is a term used in the law of motor vehicle insurance to describe insurance of the owner against the risk of loss or damage occasioned to the vehicle by a collision with other objects." 44 C.J.S. Insurance § 7, p. 476. All that may be gathered from that passage of Collum's letter is that the Missouri Automobile Club was representing the Southern California Automobile Club in the adjustment of Terrill's claim against the Southern California Automobile Club—his own insurance company.

Bowman may have told Terrill that Terrill's statement was wanted by his own insurance company, although Terrill's subsequent testimony on cross-examination strongly indicates that Terrill assumed that Bowman was indirectly representing the Southern California Automobile Club. Taking Terrill's testimony at face value, however, the statement attributed to Bowman did not establish the extent or scope of Bowman's agency, and as stated in State ex rel. Massman v. Bland, 355 Mo. 17, 194 S.W.2d 42, 45: "The general rule is well settled that neither the fact nor scope of agency can be established by the mere out of court declarations of the alleged agent. * * * *" Collum's letter to Bowman was primarily relied on by counsel for Terrill to establish the extent and scope of Bowman's agency, but that letter, as we have pointed out, disclosed, first, that at the most the Missouri Automobile Club was only authorized at that time to represent the Southern California Automobile Club in the disposition of Terrill's claim against his own insurer under his collision insurance; and second, that the Missouri Automobile Club requested Bowman to obtain Terrill's statement for its own use and protection.

Nor does the evidence, in our opinion, otherwise establish that *at the time* Bowman obtained Terrill's statement the Missouri Automobile Club was then representing the Southern California Automobile Club in all aspects of the matter. The letters from the Southern California Club to Terrill's counsel and to Cleary tend to show at most that *at some time,* not specified, the Southern California Club permitted the Missouri Club "* * * to conduct an investigation of the facts and to handle the claims on our behalf." Since Collum stated on September 17 (only four days after the accident) that it was his understanding that the Southern California Club would conduct its own investigation on the liability feature of the case, it would appear that the decision of the Southern California Club to permit the Missouri Club to represent it generally was not communicated to the Mis-

souri Club until after that date. The fact that the Missouri Club, at some subsequent date, conducted a general investigation on behalf of the Southern California Club would likewise account for the fact that it sent Terrill's statement to the Southern California Club.

Considering the evidence as a whole, we have reached the conclusion that the court erred in sustaining Terrill's objection and in refusing to permit the defendant to cross-examine Terrill about his statement.

Of defendant's remaining points only one is likely to arise on a retrial and need be noticed. Plaintiffs called defendant to the stand as their witness, and during their examination of him defendant testified that the accident happened about 150 feet from the top of the hill. Plaintiffs then asked defendant whether defendant had ever testified under oath that the distance was 500 feet, and defendant admitted that he had. Plaintiffs next developed from defendant that defendant's deposition had been taken in an action filed by defendant and both plaintiffs against Terrill, in which defendant was represented by other counsel. Plaintiff then sought to read from the deposition defendant's testimony that the accident occurred 500 feet from the brow of the hill, whereupon defendant's counsel objected to the further use of the deposition and to plaintiffs' reading the answers therefrom " * * * for the reason that this is Mr. Barnhart's witness, and secondly, it is not the proper way to interrogate, thirdly, there is and has been no proper foundation shown that this deposition was ever filed or signature waived or signed, or otherwise proper qualification for such use as Mr. Barnhart is attempting to do." The court overruled the objections on the grounds that the witness " * * * is a party defendant in this case. * * *" Plaintiffs then read the pertinent excerpt from the deposition and defendant readily conceded that he had stated that the distance was 500 feet, and explained that since the taking of

his deposition he had measured the distance and found it to be 150 feet.

■ By the use of the phrase "this is Mr. Barnhart's witness" defendant may have intended to raise the objection that plaintiffs could not directly impeach their own witness, even though he was an adverse party. If that was the basis of defendant's objection it should have been more plainly stated, and if so stated, should have been sustained. For while a party who calls his adversary to the stand is entitled to cross-examine him, Sec. 491.030 RSMo 1959, V.A.M.S., and to introduce evidence contradicting his testimony, a party cannot *directly* impeach the credibility of his own witness even though he be the other party to the suit. Frank v. Wabash R. Co., Mo., 295 S.W.2d 16; Waller v. Oliver, Mo., 296 S.W.2d 44. However, in his brief, defendant does not claim that the court erred in overruling that part of his objection, and we must therefore regard it as abandoned. In re Off-Street Parking Facilities, Kansas City, Mo., 287 S.W.2d 866; Heuer v. Ulmer, Mo., 273 S.W.2d 169. Defendant's only assignment regarding the court's action on his objections is that the court erred in permitting plaintiffs to use the deposition because it had not been signed or otherwise approved by defendant. Defendant cites Sections 492.340 and 492.400 RSMo 1949, V.A.M.S., and the cases of Westinghouse Electric Supply Co. v. Binger, Mo.App., 230 S.W.2d 166 and Byers Bros. Real Estate and Insurance Agency, Inc. v. Campbell, Mo.App., 329 S.W.2d 393. Those cases, however, involve situations in which the unsigned depositions were sought to be introduced in evidence as admissions against interest. In the instant case the defendant's unsigned deposition was used for the purpose of impeachment as a prior inconsistent parol statement. The failure of a trial court to permit the use of portions of an unsigned deposition for impeachment purposes was held to be error in Peppers v. St. Louis-San Francisco Ry. Co., 316 Mo. 1104, 295 S.W. 757, 762,

where it was said: "* * * If the witness has not signed the deposition, he may be impeached as for any other parol statement, preferably, however, by having the reporter taking the deposition read his original shorthand notes. We think the trial court erred in refusing to permit this method of examination." Thus it may have been error to have permitted plaintiffs to directly impeach the defendant, since they had called him as their own witness; as to that, no complaint is before us. But the method used to impeach the defendant was proper.

For the reasons stated, the Commissioner recommends that the judgment be reversed and the cause remanded for a new trial.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is reversed and the cause remanded for a new trial.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.